JOYCE v. GROWNEY, Appellant, JOYCE et al.

Division One, February 20, 1900.

1. **Judgment**: RESPONSIVE TO PLEADINGS: RESULTING TRUST: CURTESY. Where the only purpose of the petition is to establish a resulting trust in favor of plaintiff in a tract of land, on the ground that his money paid for it and the deed was wrongfully made to his wife, and also incidentally to set aside a deed made by plaintiff's son after her death, alleged to have been obtained by fraud while he was a minor, there is no foundation in the pleadings, the resulting trust being disallowed, either for a decree vesting him with curtesy in the property, or for declaring the son's deed a fraud, or for otherwise adjudging the son's interest in the land.

2. **Equity Jurisdiction**: ESSENTIALS. Two conditions are ever essential for the enlistment of the powers of a court of equity, namely, a case commended in the forum of good conscience, and reasonable diligence in prosecuting it.

3. **Pleadings**: AMENDMENT: CHANGING ISSUES. A defendant in an equity case should not be permitted, after all the evidence on both sides is in and the case has been argued and submitted, to file a second amended answer changing his attitude from that of acquiescing in the claim of plaintiff to that of asserting ownership in himself of the property in controversy, and of seeking independent relief against his co-defendant. Especially should he not be permitted to do so, if he had in person signed and sworn to his former answer and the circumstances indicate that such former answer grew out of collusion with plaintiff. Nor should a decree be based upon such amended answer.

4. ———: ———: NEW MATTER: COUNTER-CLAIM, ETC. The statute limits the new matter that may be pleaded in the answer to such things as are a defense to plaintiff's suit, or else a counter-claim against *him*. It does not permit a counter-claim or equitable cross action of one defendant against another, except that one defendant may be entitled to such relief as will enable him to make good his defense to the plaintiff's suit.

5. ———: NEW ISSUES: JUDGMENT. The statutes do not permit one defendant to inject into the plaintiff's suit an independent suit against his co-defendant not necessary to his defense to plaintiff's

Joyce v. Growney.

*action.* And the relief that may be granted to one defendant against another, whether the action be one at law or in equity, is only such as is incidental to his defense.

6. **Resulting Trust: FACTS STATED.** Plaintiff, a resident of Pennsylvania, furnished his father-in-law $550 or $600 of the purchase price of $1,120 for a tract of land, and the title without his knowledge was taken in the father-in-law, who furnished the rest of the money. Nine years afterwards plaintiff moved to Missouri, and was present and knew of and consented to a conveyance of the land to his wife, and joined her in executing a deed of trust to secure a loan of $400, the lender giving the check to her in his presence. She died about a year thereafter, and nine years later, the incumbrance still existing, he brought a suit to establish a resulting trust in himself. *Held* that on this evidence the bill should have been dismissed.

Appeal from Nodaway Circuit Court.—*Hon. C. A. Anthony,* Judge.

REVERSED AND REMANDED (*with directions*).

*Growney & Growney* for appellant.

(1) The testimony in this case to establish a resulting trust is of very doubtful character, being altogether the conduct and intention of a father in deeding land to his daughter. There is absolutely no evidence that the money received by the father from the daughter was invested in this land. The payment at the time is indispensable to the creation of a trust. 4 Kent, p. 305. The testimony and all the admissions of Graham in the record of this case fall far short of the rule to establish resulting trusts as defined by our decision. Burdett v. May, 100 Mo. 16. No resulting trust arises where a father or husband deeds property to a child or wife. Perry on Trusts, sec. 79; Alexander v. Narrance, 17 Mo. 228; Price v. Cain, 112 Mo. 419; Jackson v. Jackson, 91 U. S. 122. (2) The statute of limitation is a complete bar to the trust sought to be established by the plaintiff's petition in this cause. The rule is that the statute begins to run from the discovery by the person entitled to sue of the facts on which equity will found the trust. · Buren v.

Joyce v. Growney.

Buren, 79 Mo. 538; Hunter v. Hunter, 50 Mo. 445; Rogers v. Brown, 61 Mo. 187; Lewis v. Schwenn, 93 Mo. 26; Landis v. Saxson, 105 Mo. 489; Conn. M. L. Ins. Co. v. Smith, 117 Mo. 296. Courts of equity view with disfavor suits that are brought long after the transaction has occurred and long after death has sealed the lips of those familiar with occurrences so remote in point of time. State ex rel. v. West, 68 Mo. 229; Lenox v. Harrison, 88 Mo. 491; Burdett v. May, 100 Mo. 13. (3) The court erred in admitting evidence touching the validity of deeds by J. E. Joyce to appellant, on the pleading and petition of P. J. Joyce, plaintiff. It is well-settled law, and needs the citation of no authority to support it, that no one can ask to have a contract rescinded not a party to it. The rule is the same as to minor's deed or contract. The rules of practice in equity cases can not be stretched to affirm the action of the trial court on this point. Newham v. Kenton, 79 Mo. 382; Ross v. Ross, 81 Mo. 84. (4) The evidence does not justify the finding of the trial court in cancelling deeds of J. E. Joyce to appellant. The evidence shows the consideration was full and ample. Subsequent acts of a grantor in a deed to impress or impeach the title of his vendee are not recognized, or least not favored in law or equity. Zoll v. Carnahan, 83 Mo. 43. The threats and duress complained of in this case, even if clearly proven, are not sufficient to support the finding. Davis v. Luster, 64 Mo. 43; Davis v. Crane, 109 Mo. 332.

*E. A. Vinsonhaler* for respondent.

(1) The dealing in this case was between an attorney on one side and on the other the client, who, when first deed was made, was a minor. It needs no citation of authority to sustain the point, that the first deed was voidable. (2) But appellant contends that there was no such duress at the execution of second deed as would avoid it. While such

threats of prosecution as were made here, if made by one who had sustained no confidential relation, might be so held, we think no case will be found, holding that an attorney to whom the client has confided his secrets, can use such information to coerce his client into making a deed to two-thirds of an eighty acre farm for $240. In the first place the presumption is against the attorney, the burden of proof is upon him to show the utmost fairness. 3 Am. and Eng. Ency. of Law (2 Ed.), 332; Story's Equity, secs. 310, 311; 2 Pomeroy's Equity, sec. 960. Here this boy was barely of age and so grateful he wanted to pay Mr. Growney a fee of $250; but if the boy is to be believed his attorney abused the confidence reposed in him, reminding him of crimes confessed, and by threats of using this against him, gets this deed. Eoff v. Irvine, 108 Mo. 383. And the fact that Joyce was guilty of the offense charged does not help the matter, it is nevertheless duress. Morse v. Woodworth, 155 Mass. 233; Thompson v. Niggley, 53 Kan. 664; Miller v. Bryden, 34 Mo. App. 602.

VALLIANT, J.—This is a suit in equity, the original purpose of which was to establish a resulting trust, and to vacate a deed alleged to have been obtained by fraud from the plaintiff's son while a minor.

The original petition, filed February 1, 1896, states, substantially, that in 1876 the plaintiff, Patrick J. Joyce, furnished defendant Graham, who was the father of plaintiff's wife, $600 with which to buy land in Nodaway county for plaintiff; that Graham bought the land, took the deed in his own name, and in March, 1885, deeded it to his daughter, plaintiff's wife; that plaintiff did not know that Graham had taken the deed in his own name, nor that he had conveyed the title to plaintiff's wife, until shortly after her death, which occurred in June, 1885; that when she died she left four minor children, three of whom have since died,

leaving the plaintiff their father and defendant John E. Joyce their brother, their sole heirs; that John E. would be 21 years old on February 10, 1896 (nine days after the filing of the petition); and that in January, 1895, defendant Growney had, by fraud and without consideration, obtained from John a deed conveying his interest in the land. The prayer was that the deeds to Graham, and from him to plaintiff's wife, be decreed conveyances in trust for plaintiff, that the title of John be vested in plaintiff and the deed from John to Growney be canceled, etc.

On February 27, 1897, plaintiff filed an amended petition, substantially as the original, with the additional statements that the deed of January, 1895, from John to Growney, was procured by the latter's brother who was the attorney for John while he was confined in jail, and who made false representations to obtain it; that John informed Growney before he executed the deed that the land belonged to his father whose money had paid for it; that after John became of age and since the commencement of the suit he was induced, by threats of the attorney that he would have him indicted and sent to the penitentiary, to make a second deed to defendant, Growney, which he did, conveying the same land.

The three defendants answered separately. Growney's answer denies all charge of fraud, etc., states that the deed from Graham to plaintiff's wife was duly executed and recorded on the 28th of March, 1885, and plaintiff had full notice of it; that she died leaving three children, two of whom had since died without issue, and the plaintiff and John were their sole heirs; that the first deed from John to this defendant in January, 1895, was made for a valuable consideration, $350, and the second, of date February 15, 1896, after he was of age, was made for the purpose of confirming the former and for a valuable consideration of $250 then paid him; and that plaintiff's cause of action did not

accrue within ten years. The answer of Graham was a general denial and statute of limitations.

The answer of John E. Joyce is substantially an admission of the statements in his father's petition, iterating that his deeds to Growney were without consideration and that the last one was made through fear under threat from his former attorney, Growney's brother, that he would have him indicted and sent to the penitentiary; that Growney knew when he took the deeds that plaintiff had paid for the land and knew that each and every allegation in plaintiff's petition was true.

This answer is signed and sworn to by John E. Joyce in person before the circuit clerk, and is also signed by Mr. Moses T. Banta as his attorney. In this he refers to a former answer, which is not in the abstract, which he disowns and pronounces unauthorized. This stood as his answer until after the evidence was all in and the cause argued and submitted for decision, then he was permitted to file, over the defendant Growney's objection, what on its face is called his answer, repudiating his second, as he had done his first, and declaring this to be his first authorized pleading in the case. It is signed by Mr. Vinsonhaler as his attorney. In this last pleading he asserts title in himself by inheritance from his mother to two-thirds of the land, reiterates his former statement in regard to the deeds to Growney and prays to have them canceled and for such further relief "as equity and good conscience may require."

To this answer his co-defendant Growney demurred upon the ground, among others, that the statements therein did not entitle that defendant to the relief sought against this, his co-defendant, which demurrer was overruled, exception taken, and then an answer to that answer was filed by Growney, traversing its statements and averring good faith and valuable consideration on his part for the deeds and col-

lusion between defendant John E. Joyce and his father the plaintiff to defraud defendant Growney.

Thereupon the court without further trial or evidence rendered its findings and decree.

The testimony showed that in 1876 or 1877 the plaintiff, then living in Pennsylvania, sent $600 to his wife's father, defendant Graham, in Nodaway county, Missouri, to buy land for him. Graham bought the land in controversy in 1878 for $1,120, using the $600 received from plaintiff for this purpose, and paying the balance himself, and taking the title in his own name. In 1885 plaintiff and his wife moved to Nodaway county and took up their residence on this land, and plaintiff has lived there ever since. Shortly after they came to Missouri, in March, 1885, plaintiff, his wife and her father, Graham, went together to Maryville, and there, in the office of Mr. Montgomery, a real estate dealer, Graham executed a deed conveying the land in suit to plaintiff's wife, and at the same time plaintiff and his wife executed a deed of trust on it to secure $400, loaned her by Mr. Montgomery. Both deeds were filed for record the same day. The check for the $400 borrowed was given to her. In June, 1885, plaintiff's wife died, leaving three young children, two of whom died, leaving the plaintiff their father, and defendant John E. Joyce their brother their sole heirs. Before making the deed to plaintiff's wife Graham told him that he was going to do so and he consented. The land in suit contains 80 acres and is worth $30 to $35 an acre; it is incumbered with the deed of trust above mentioned executed by plaintiff and wife in 1885, which has now increased by accumulated interest to about $800, and the two-thirds interest claimed by defendant John E. Joyce is also incumbered by his father's life estate by the curtesy.

In June, 1894, defendant John E. Joyce, was arrested on the charge of forgery, and being unable to give bail was in jail to await the grand jury; P. L. Growney, brother of

defendant Growney, became his attorney and was friendly towards him, gave him a little money to buy tobacco, and when he was indicted for forgery of a check on a bank, P. L. Growney acted as his attorney, and so managed the case as to get him off with a sentence of six months in jail. While he was serving his sentence the attorney visited him in jail, occasionally gave him a little money, and sometimes when he was sick Growney would come to see him and the sheriff would entrust him with Growney to go out for a walk. His six months term was up on Christmas day, 1894, except twenty days in which he was to be held for costs, but attorney Growney again befriended him and through his influence his brother, defendant Growney, paid the sheriff $35, the amount of the costs, bought him an overcoat and gave him a dollar. Then he went away, and Growney did not see him for about three weeks, at the end of which period he came to town, and on January 15, 1895, applied to defendant Growney for money to buy clothes, pay his board and pay his fare to Omaha where he wanted to go to try to get work. He also wanted to pay his attorney, defendant's brother, $25 for his services. Defendant Growney agreed to and did buy him clothes, became responsible for his board at the hotel until he should leave for Omaha and give him $15 or $20 for his traveling expenses and agreed to pay his attorney's fee. The amount so advanced to him was about $100, exclusive of the attorney's fee. For this consideration he executed the deed of January 15, 1895, conveying his interest in the land to defendant Growney. On January 1, 1896, he came back from Omaha and went to P. L. Growney's house, who, as he himself says, "took me up town and got me supper and stood good for my board at the hotel; I then stayed at the hotel until this suit was brought by my father." The suit was brought February 1, 1896. The boy came of age February 10.

On February 15, 1896, the plaintiff came to town and met his son John E., and, in conference with the plaintiff's

attorney, it was agreed that for $300, the boy would sell his interest in the land to his father, that is $150 cash and $150 secured by mortgage. The mortgage was drawn and given to the boy to take out to his step-mother for her to execute; but instead of going to his step-mother he went to the office of attorney Growney, and there met also the defendant Growney, and told him of the proposed sale to his father, but said he did not want to have anything to do with him, because his step-mother had thrown scalding water on him and they, his father and step-mother, had driven him off the place; he asked the Growneys what they would give him for his interest in the land. After some discussion it was agreed that defendant Growney would give him $150 in cash and his note for $100, which was done, and the second deed, the deed of February 15, 1896, was then duly executed and acknowledged, the cash and note were given as agreed, and defendant John E. sold the note on that day for $90 in cash. The statements in the pleadings that this deed was obtained by means of threats or duress are not sustained by the evidence. The boy did so testify, but his testimony is not credited, and is contradicted by three unimpeached witnesses, the two Growneys and John M. Howendobler, who was present and witnessed the transaction. The boy also testified that when he made the first deed to Growney he told him that the land belonged to his father whose money had paid for it. That testimony was given before he repudiated his second answer and while he was playing to his father's hand. By his last answer he seems to have turned against his father and claimed the land for himself.

The court made special findings to the effect that the plaintiff's right to enforce an implied trust in the land was barred by the statute of limitations, that he was entitled to a life estate by the curtesy and to one-third in fee subject to the payment of one-third of the $400 mortgage, that defendant John E. Joyce was entitled to the other two-thirds of the fee

subject to his father's life estate and to the payment of two-thirds of the mortgage, that the deeds to defendant Growney were obtained by fraud and to be canceled, but that Growney was entitled to a lien for $257 and interest, on John E. Joyce's share, and if it should not be paid by a day named that share was to be sold, that each party except Graham, who was discharged, should pay his own costs and a decree was entered accordingly, ·from which the defendant Growney in due course has appealed.

I. There is no foundation in the pleadings to sustain the decree.

The only purpose of the petition is to establish a resulting trust in plaintiff's favor for the whole 80 acre tract, and incidentally to clear the way to that end. If he was not entitled to establish the resulting trust which he claimed, he had no interest in the estate his son inherited from his mother, and no right to challenge the validity of the deeds that his son made to Growney; if he was not entitled to establish that resulting trust he was not entitled to anything attempted to be involved in this suit. He was in possession of the land, his right to possession as tenant by the curtesy was not questioned, nor was there any question as to his title to an undivided one-third of the land in fee, neither was the mortgage nor the division of its burden a subject of litigation. Yet although the court found that the plaintiff was not entitled to establish the resulting trust, it made a decree in his favor in regard to those matters not litigated, and on that decree founded a decree in favor of defendant, John E. Joyce, cancelling the deeds to Growney.

Even on the ground of a resulting trust the petition presented an exceedingly questionable and very stale case. The statements that in 1876 plaintiff furnished defendant Graham, his wife's father, with $600 with which to purchase land for him, that Graham bought the land but took the title in his own name, a fact which plaintiff did not discover until

nine years had elapsed, without attempting to show any reason why he did not discover it sooner, and that in the meantime Graham had deeded the land to plaintiff's wife, which fact also he did not discover until after she had died leaving three children to inherit it, and no suggestion of excuse for his not knowing it, are statements that do not make a strong case for plaintiff. Then when it also appears that although he discovered in June, 1885, the alleged fraud thus practiced on him by his father-in-law and his deceased wife, he did not file this suit to establish the trust until February 1, 1896, more than ten years after the alleged discovery and nearly twenty years after the original purchase by Graham, he makes a poor showing for a court of equity.

Two conditions are ever essential to enlist the powers of a court of equity, namely, a case commended in the forum of good conscience, and reasonable diligence in prosecuting it. This petition is wanting in both these essentials.

II. Section 2098, Revised Statutes 1889, directs the court to allow a certain character of amendments to pleadings at any time before final judgment, "in furtherance of justice," when they do not change the character of the claim or defense. The allowing of amendments is to a large degree in the discretion of the trial judge, but not entirely so, and may be reviewed. The farther a case has advanced the more cautious should the trial court become in allowing an amendment, and when it has advanced, as this cause had, to the close of all the evidence on both sides and the argument and submission, the court should not allow an amendment unless it is manifest that it is "in furtherance of justice." In this case justice did not demand it and the court should not have allowed the defendant John E. Joyce to file his second amended answer changing his attitude from that of acquiescing in the claim of the plaintiff, to that of asserting right of ownership in himself and seeking independent relief against his co-defendant. The circumstances very strongly

indicate that at that stage of the case he had discovered that his father had no standing in court and nothing could be made by an alliance with him, therefore he concluded to repudiate his former answer, the truth of which he had sworn to and signed in person as well as by attorney, and repudiate also that attorney, and appear in a new role with a new attorney and convert the suit, so far as he was concerned, into an independent suit of one defendant against another upon grounds independent of the plaintiff's alleged title and inconsistent with the sworn statements in his former answer. Such changes do not indicate sincerity of purpose and should be frowned upon by the courts.

It is upon this answer that the decree is mainly predictated after the total collapse of the plaintiff's resulting trust pretension.

III.    But even if this last answer of this defendant had been filed in due time it could not have been made the basis of a decree in his favor against his co-defendant. Section 2049, Revised Statutes 1889, prescribes what an answer may contain, first, a denial, etc. ; "second, a statement of any new matter constituting a defense or counter-claim," etc. Section 2050, following, defines the counter-claim referred to in the preceding section to be "one existing in favor of a defendant and against a plaintiff," etc. The statute limits the new matter that may be pleaded in the answer to that which is a defense to the plaintiff's suit or else a counter-claim against him; it does not authorize a counter-claim or an equitable cross action of one defendant against another except as one defendant may be entitled to such relief against another as will enable him to make good his defense to the plaintiff's suit. Whatever affirmative relief one defendant may have as against another must be of a character responsive to the plaintiff's suit.

Section 2207 is : "Judgment may be given for or against one or more of several plaintiffs, and for or against one or

Joyce v. Growney.

more of several defendants; and it may determine the ulti-
mate rights of the parties on each side, as between themselves,
and it may grant to the defendant any affirmative relief to
which he may be. entitled." But the judgment in favor of
one defendant against another as authorized in the statute is
such as is responsive to the issues which the statutes above
quoted authorize to be made in the pleadings. The statutes
relating to pleadings do not authorize one defendant to inject
into the plaintiff's suit an independent suit either at law or in
equity against his co-defendant not necessary or germane
to his defense to the plaintiff's suit, and the. relief that may
be granted to one defendant against another is only such as
is incidental to his defense.

Hicks v. Jackson, 85 Mo. 283, was an action of ejectment.
Originally there were but two persons in the suit, the plaintiff
and the defendant Jackson, but the latter, by amended answer
and cross-bill, brought in defendant Hurt under allegations
relating to defendant Jackson's title and possession that gave
him in equity a demand for redress against Hurt in the
event of plaintiff's recovery. The transactions on which the
cross-bill was founded were involved in those under which
the plaintiff and Jackson respectively claimed title and right
of possession. The judgment was for plaintiff against Jack-
son for possession and for Jackson against Hurt for a certain
sum of money. The court (p. 294), said: "Appellant admits
the equity rule, that, where two defendants are in court as
necessary parties to a complete determination of plaintiff's
cause of action, the court, being thus possessed of the cause,
may proceed to adjust the equities and conflicting claims and
rights, as between co-defendants, even to giving judgment in
favor of one defendant against another," etc.

In Dice v. Morris, 32 Ind. 283, the plaintiff sued in
equity to annul a title to land that had passed by a deed from
her to defendant Thompson and from him to defendant Dice
on the ground of fraud or mistake. Thompson by his answer

denied the charge of fraud but admitted the mistake and averred that he had by mistake conveyed a greater interest in the land to Dice than either intended; he made his answer a cross-bill against his co-defendant and prayed a reformation of the deed. The decree of the court was in accordance to this prayer, in favor of Thompson against his co-defendant, and in favor of plaintiff against both of them. The Indiana statute in this respect is like ours.

These two cases come nearer recognizing the propriety of a cross-bill of the kind in question, than any authorities to which our attention has been called, but neither of these countenance the proposition that although the plaintiff is not entitled to relief against either defendant touching the subject-matter in dispute, yet one defendant may have relief against his co-defendant touching the same subject.

In Manning v. Gasharie, 27 Ind. 399, it was held that such a cross-bill could not be maintained when it was no defense to the plaintiff's suit.

"A cross-bill is 'a mere auxiliary suit, and a dependency of the original.'" [Cross v. DeValle, 1 Wall. 14; 4 Am. and Eng. Ency. of Law, 905.].

IV. The evidence showed that the petition which we have seen stated a very weak case, stated it even stronger than the facts warranted. In the first place it showed that the plaintiff did not furnish all, but only about one-half the money with which the land was purchased, and secondly that he knew of and assented to the conveyance of the title to his wife in 1885; he was present when the deed was written and delivered to her, and immediately joined her in the execution of a deed of trust to borrow $400 on the land, the check for the money being given to her in his presence. On this evidence his bill should have been dismissed and with it should have gone the anomalous equitable cross-bill suit of the defendant John E. Joyce against defendant Growney.

But even if defendant John E. Joyce had had a right

to inject that into this suit, his claim breaks completely down under the evidence.   According to his own statement he has received from defendant Growney about $375, for his share in the land, which is an 80 acre tract worth according to the evidence $30 or $35 an acre, subject to the incumbrances of a $400 mortgage, and subject also to the life estate of plaintiff who, if he be 44 years old, as stated in appellant's abstract, has a life expectancy of 25 to 27 years.

Taking the land at its highest valuation $2,800 less the principal mortgage debt $400, the value of the plaintiff's life estate computed on a six per cent basis is $1,633, which leaves as the value of the two-thirds of the fee in dispute $511, or $156 more than Growney paid for it.   If the computation is made on a valuation of $30 an acre   this two-thirds interest is worth only $306.94, which is less than Growney paid for it. In these estimates the interest which the evidence shows has been suffered to accumulate on the mortgage is not deducted from the value of the land because the burden of keeping down the interest is on the life tenant.   These estimates we have made merely to ascertain if there was any such inadequacy of price as would authorize a cancellation of the deeds, even if there had been any such charge, which there was not.

The charge against defendant Growney is that he obtained the second deed, after the young man had come of age, by means of threats and intimidation.   There is not a word of trustworthy proof to support the charge.   The boy seems to have made a bad beginning in life; before he was twenty years old he had been so far overcome by bad influences that he found himself in jail on a charge of forgery, in poor health, destitute, apparently abandoned by his father and friendless.   The only person then who showed him any kindness was his attorney Growney; he visited him when he was sick, took him out walking by permission of the sheriff, gave him a little money, appeared for him in court and obtained a merciful sentence.

The money expended for him by defendant Growney for whch the first deed was given was in strict necessity, to save him from hunger and cold and to send him away from the place where his misdeeds were known, to a new field where there was hope of his obtaining honest employment. The Growneys seem from the beginning to the end of this record to have been the only persons who ever did a kind act for him. The money defendant Growney gave him for the second deed, added to that which he had previously given him, was more than his father was proposing to give him for the same interest; and if we consider the reason he gave at the time for preferring the Growneys to his father and step-mother we can not say that it was an unnatural preference.

There is nothing in the plaintiff's case, or that of defendant John E. Joyce, to commend either to a court of equity, and there is nothing either in the pleadings or evidence to sustain the decree that was rendered.

The judgment of the circuit court is reversed, and the cause remanded to that court with directions to render judgment for the defendants and dismiss the plaintiff's bill.

All concur.