**Roscoe GAINES (Plaintiff), Respondent,**

v.

**Elaine SCHNEIDER et al., Defendants, Armber Realty Co., a Corporation (Defendant), Appellant.**

No. 30092.

St. Louis Court of Appeals.

Missouri.

April 21, 1959.

Rehearing Denied May 18, 1959.

———◆———

Julius H. Berg, James C. Jennings, St. Louis, for appellant.

Ellsworth W. Ginsberg and Sanford E. Wool, St. Louis, for respondent.

DOERNER, Commissioner.

This was an action for damages begun in the Circuit Court of the City of St. Louis for injuries claimed to have been received by the plaintiff, a sub-tenant, upon a part of defendant's premises used in common by all of the tenants. The jury returned a verdict for plaintiff in the sum of $7,500, which was reduced by a remittitur to $6,250.

The accident happened on August 6, 1955. For nine years prior thereto plaintiff occupied one of the two bedrooms, and shared the kitchen, of a three-room unit on the third floor of the building at 911 North Theresa Avenue, St. Louis, Missouri, paying his rent to Mrs. Lena Edgerson, who occupied the other bedroom and who rented the unit from the owner. Defendant corporation purchased the property in April, 1955, taking title in the name of a straw party, and was the beneficial owner at the time of the accident. No complete description of the premises appears in the record, but it is clear that another tenant occupied the rooms on the second floor, and that there was but one front door entrance for the common use of the occupants of the second and third floors. There was also a rear entrance to the premises with a stairway leading directing to the third floor, the evidence being conflicting as to whether or not it was kept locked.

 Plaintiff testified that on the evening in question he returned home between 6:30 and 7:00 P. M., and that as he approached the nine concrete steps which led to a landing in front of the door he found two ladies sitting on them, and two men standing on the sidewalk talking to the ladies. Plaintiff greeted them; one of the women, Mrs. Davis, arose to let him by, and he proceeded up the steps to the landing. The marble doorsill of the front door was about five or six inches higher than the landing. Plaintiff stepped up onto the doorsill with his right foot, and as he did so a piece broke off of the doorsill causing him to lose his balance and to fall down the flight of nine steps to the sidewalk. Prior to the fall plaintiff worked as a laborer for the V. F. Christmann Lumber Company, his duties consisting of loading and unloading heavy lumber, but subsequently he was only able to perform light work.

On both direct and cross-examination of the plaintiff it was developed that the marble doorsill had had a crack in it and a piece had been broken out of it during the entire nine years he had resided in the premises. He used the front entrance at least twice a day, sometimes more, and was

fully aware of the condition of the doorsill. At the time he fell it was about dusk out, rather dark, but a nearby street light and the lights within the house illuminated the area sufficiently so that he could and did see the doorsill at the time he stepped on it. Based upon this testimony of the plaintiff, defendant contends that the trial court erred in overruling its motion for a directed verdict, because such evidence convicted the plaintiff of contributory negligence as a matter of law.

Defendant concedes that as a landlord it was its duty to keep those parts of the property that were used in common by all of its tenants in a reasonably safe condition. But it argues that it was not an insurer of its tenants, and that under "certain circumstances" a tenant can be guilty of contributory negligence as a matter of law so as to preclude a recovery against the landlord. Assuming the rule of law to be as stated, we think it has no application here; nor do the cases cited by defendant support its position. Adkins v. Sutherland Lumber Co., Mo.App., 307 S.W.2d 17, involved a business invitee-owner relationship, and not that of a landlord-tenant; and as pointed out in Coplen v. Zimmerman, Mo., 271 S.W.2d 513, 517, there appears to be a distinction between the two classes of cases. In Edwards v. E. B. Murray & Company, Mo.App., 305 S.W.2d 702, the second case cited by defendant, no question of contributory negligence was considered.

■ The last case cited by defendant is the landmark case of Roman v. King, 289 Mo. 641, 233 S.W. 161, 25 A.L.R. 1263. That case may be said to mark the inception of the present rule that the continued use by a tenant of a portion of the premises which is defective and which it is the landlord's duty to repair, does not, standing alone, convict the tenant of contributory negligence as a matter of law if he continues to use the same, provided it reasonably appears that he can safely do so with the exercise of care. Roman v.

King, supra; Brewer v. Silverstein, Mo., 64 S.W.2d 289; Coats v. Sandhofer, Mo. App., 248 S.W.2d 455. Unless the defective condition is so open, obvious and dangerous (what is described in some cases as "glaringly dangerous") that it can be said that no reasonably prudent person would have done as the injured party did, the issue of contributory negligence is one for the jury. Brewer v. Silverstein, supra; Coats v. Sandhofer, supra; O'Neill v. Sherrill, Mo.App., 254 S.W.2d 263. Under the facts of this case, we believe the trial court was correct in overruling the defendant's motion for a directed verdict and in submitting the question of contributory negligence to the jury.

■ One of the doctors who testified on behalf of plaintiff was Dr. Walter R. Johnson, an orthopedist, to whom the plaintiff was referred by Dr. Blair W. Carter, another of his physicians. In his direct examination Dr. Johnson related the orthopedic examination he had made of the plaintiff and the condition he found from his examination, including the wasting away of the muscles of the right shoulder joint, the weakness, restriction of motion and crepitation of that joint, and a crepitation in the right knee. He also exhibited the X-rays which had been taken of plaintiff's right shoulder, and pointed out the evidence thereon of the acromio clavicular separation which in his opinion the plaintiff had sustained. Defendant's cross-examination of Dr. Johnson was confined to the ailment of arthritis, to which the doctor had briefly referred in his direct examination. Counsel for defendant, by his questions, developed from the Doctor that there are two types of arthritis, one being the degenerative type and the other rheumatoid arthritis; and that the plaintiff had the degenerative type. On redirect examination the Doctor testified that degenerative arthritis was in turn subdivided into two categories, traumatic arthritis and osteo-arthritis, depending upon the history; that there is no way of telling from merely looking at the X-ray whether

or not the arthritis is to be classified as traumatic or osteo-arthritis; and that a diagnosis can only be made by taking into account the history of the patient. Counsel for plaintiff then inquired whether the Doctor had taken the history of the plaintiff into account in arriving at his diagnosis, and the Doctor answered that he had. Defendant's recross-examination immediately followed, which we quote in full:

"Q. Doctor, let me ask you this. In reaching your diagnosis, I get it that you diagnosed this condition based upon the history the man gave you?

"A. Yes.

"Mr. Jennings: If the Court please, I move this doctor's entire testimony be stricken on the grounds it is not based upon personal examination but based upon the history as furnished him by the plaintiff. I move all his testimony be stricken.

"The Court: Objection overruled.

"Mr. Jennings: That's all."

There was no elaboration as to the nature of the "history" to which the Doctor referred. Considered in the light of the preceding questions, we think it may fairly be inferred that the history given the Doctor was that the plaintiff had fallen.

Defendant assigns error in the overruling of his motion to strike the Doctor's entire testimony, on the grounds that a doctor may not base his opinion upon or testify to statements of the patient with respect to past physical conditions, or circumstances surrounding the injury, or the manner in which the injury was received. But a fair reading of the record discloses that Dr. Johnson based almost all of his opinion of the plaintiff's injuries on the examination he made and on the X-rays taken. The motion to strike was therefore far too broad, and properly overruled. Furthermore, it was only in connection with the nature of the arthritis from which he found plaintiff to be suffering that he took into account, in making his diagnosis of traumatic arthritis, the history of plaintiff's fall. He did not attempt to testify as to what plaintiff had told him regarding the circumstances surrounding the injury, nor the manner in which the injury had been received. No serious contention was made by the defendant that the plaintiff did not fall down the steps on the occasion in question, the thesis of its defense being that the plaintiff fell because he was intoxicated, and not because the doorsill broke. The rule is that if the statement made to the Doctor is confined to a fact already established by competent evidence or a fact not contested or disputed, then there is no error in permitting the answer to be given or to stand. Huffman v. Terminal R. Ass'n of St. Louis, Mo., 281 S.W.2d 863; Oesterle v. Kroger Grocery & Baking Co., 346 Mo. 321, 141 S.W.2d 780; Baumhoer v. McLaughlin, Mo.App., 205 S.W.2d 274. And lastly, the evidence showed that Dr. Johnson examined plaintiff for the purpose of treating him, and not merely to qualify as an expert witness in the case. As shown by the Doctor's testimony, some inquiry as to whether or not the plaintiff had suffered a trauma was necessary to enable the Doctor to make an intelligent diagnosis, and was therefore properly used in formulating his opinion. Lesch v. Terminal R. R. Ass'n of St. Louis, Mo., 258 S.W.2d 686; Edwards v. E. B. Murray & Company, Mo.App., 305 S.W.2d 702.

Defendant's next assignment of error also relates to an incident which occurred during the testimony of Dr. Johnson. At the first reference to traumatic arthritis in the doctor's direct examination, defendant's counsel objected to such evidence as being beyond the scope of the pleadings. The trial court sustained the objection, and at counsel's request instructed the jury to disregard the testimony. Plaintiff's counsel then pointed out to the court that the petition alleged

contusions to, and a wrenching, tearing, spraining and straining of the right shoulder, and the bones, muscles, ligaments, tendons, nerves and tissues thereof, and argued that if the traumatic arthritis was caused by the trauma, the evidence was within the pleadings and admissible, even though not specifically pleaded. The court then stated, in the presence of the jury: "I have no way of knowing whether or not that would be a probable consequence of this injury. Let me suggest this to you. If you feel it is, why don't you ask leave to amend your petition and then go ahead?"

Defendant contends that the court's foregoing remark was tantamount to an expression of the court's opinion as to the weight or sufficiency of the evidence, or as to what had or had not been established, and therefore improper and erroneous, citing 88 C.J.S. Trial § 50, p. 135. However, the most that the court did was to indicate a lack of knowledge of whether evidence as to traumatic arthritis would or would not be a probable consequence of the plaintiff's accident and injuries, and to suggest that if plaintiff's counsel thought it was he might ask leave to amend the petition and then propound his question. The same authority cited by defendant, 88 C.J.S. Trial § 49, pp. 131, 132, also states:

> "In view of the general duty of a trial judge to see that as far as possible, cases brought before him are disposed of on their merits, as discussed supra § 36, ordinarily it is not improper for him to make suggestions to parties or counsel as to procedure in the action or at the trial which will conduce to that end, as by calling attention to omissions in the pleadings or defects in the evidence which may result in a mistrial, or to suggest that a certain document be produced, that the pleadings be amended to conform to the proof, or that a party elect on which of two or more counts in his pleading he wishes to proceed."

■ Part of Instruction No. 11, given at plaintiff's request on the issue of damages, read:

> "The Court instructs the jury that if under the evidence and the other instructions of the Court, you find in favor of plaintiff, you will allow him damages; and in assessing his damages you should allow him such sum as you find from the evidence will fairly, reasonably and fully compensate him:
>
> \* \* \* \* \* \*
>
> "Third: For such loss of earnings, if any, you find from the evidence plaintiff has suffered by reason and on account of injuries, if any, suffered at the time and place mentioned in the evidence.
>
> "Fourth: For such distinct permanent injuries, if any, plaintiff has suffered by reason and on account of injuries, suffered by him at the time and place mentioned in the evidence, and in this connection you may consider such impairment, if any, in plaintiff's ability to work and labor as you find from the evidence that plaintiff has suffered as a result of the injuries received at the time and place mentioned in the evidence."

Defendant contends that since the third paragraph of the instruction authorized the jury to compensate plaintiff for the loss of earnings he had suffered, the fourth paragraph necessarily referred to a loss of future earnings; and that in the absence of any substantial evidence of a loss of future earnings it was error to include in the instruction the fourth paragraph thereof. It is true that there was no evidence introduced by plaintiff which would substantiate an award for the loss of future earnings; in fact, plaintiff's testimony was that at the time the trial was held he was earning about four dollars more a week than he had earned at the time the accident occurred. But the fourth paragraph of the instruction permitted a

recovery only for the impairment of plaintiff's ability to work and labor, not for the loss of any future earnings. For a review of the cases illustrating the distinction, and approving instructions similar to that given in the instant case, see Donahoo v. Illinois Terminal Railroad Company, Mo., 300 S.W.2d 461, 466

That defendant recognizes the distinction is borne out by the latter part of its argument, in which it is further contended that there was no evidence introduced of any impairment of plaintiff's ability to work and labor. But the plaintiff testified that for eleven years prior to the accident his work consisted of loading and unloading heavy lumber, and that he was physically able to perform such work without difficulty. He was hospitalized for five days following the accident, during which time an operation was performed, and convalesced at home, under continued medical treatment. Upon his return to work, on October 31, 1955, his employer gave him light duties to perform, because, as plaintiff stated, his employer told him not to try to load or unload lumber. Plaintiff's shoulder continued to be stiff and painful, and he was not able to lift it up "very high." He entered the Veterans' Hospital on March 26, 1956, where he remained until April 16, 1956, an operation being performed to remove a pin that had been inserted in the first operation. His right shoulder still hurt him at the time the case was tried in November, 1957; he could not lie on it, and he could not lift lumber with it. Mr. Oliver H. Feldman, Secretary-Treasurer of V. F. Christmann Lumber Company, plaintiff's employer, testified that since the plaintiff returned to work "we have been picking out more or less light work for him." Dr. Johnson, previously referred to, testified as to the plaintiff's impaired physical condition described above, and pointed out on the X-rays the abnormality of the shoulder joint resulting from the acromio clavicular separation, as well as the arthritic changes which had developed between the time the first X-rays were taken, immediately after the accident, and those taken fourteen months later. Dr. Blair W. Carter, a physician who treated the plaintiff after his release from the first hospital, found a limitation of the right shoulder which was painful and prevented the normal function of the arm. He also found plaintiff to be suffering from a pre-existing disease in the right knee called Pellegrini-Stieda, greatly aggravated by the accident, which resulted in a permanent bowing and deformity of the knee. Dr. Daniel Elliott O'Reilly, an orthopedic surgeon, who twice examined the plaintiff for the purpose of testifying, found the limitation of motion of plaintiff's right arm to be 30 degrees of the normal movement of 180 degrees. From X-rays taken of plaintiff the doctor pointed out the separation of the joint between the collar bone and the shoulder blade of the right shoulder, as well as a thickening of the collar bone and calcium deposits between the collar bone and the coracoid. He also testified as to the calcification of the ligament called Pellegrini-Stieda disease, which he attributed to trauma, and to the traumatic aggravation of the hypertrophic arthritis he found in the right knee. In answer to a hypothetical question Dr. O'Reilly gave it as his opinion that the plaintiff's physical condition could be the result of the fall, and that the condition is permanent. In view of the foregoing testimony there was sufficient evidence to submit to the jury the issue of whether plaintiff's ability to work and labor had been impaired.

■ Defendant's final assignment of error is that the court improperly permitted plaintiff to amend his petition during the course of the trial. While Dr. Johnson, plaintiff's first medical witness, was on the stand, following the court's suggestion previously discussed, plaintiff asked leave to amend his petition to include an allegation of traumatic arthritis in his right shoulder as a result of the fall. Defendant vigorously objected, claiming surprise, and pointed out that by the court order made

a few days before, pursuant to which plaintiff was examined by the defendant's doctor, the examination had been confined to the injuries then complained of in plaintiff's petition. The court granted leave to amend, and overruled the defendant's protest, made in the form of a motion for a mistrial.

Later, when Dr. O'Reilly, plaintiff's third medical witness, was on the stand, plaintiff again asked for leave to amend his petition, to include an allegation of the aggravation of a pre-existing arthritic condition of the right knee. Defendant again claimed surprise, citing the court order limiting the examination made by its physician, Dr. Funsch, to the matters pleaded in the plaintiff's petition. Defendant's objection was overruled, and plaintiff amended his petition accordingly. At the close of plaintiff's case defendant's counsel renewed his motion for a mistrial on the basis of surprise, and at that time informed the court that other counsel had previously represented the defendant, retained by his insurer, and that after the original attorney had withdrawn the insurance company had not given counsel a complete file. No statement was made as to the nature of the deficiency.

■ Defendant relies heavily on the case of Simon v. S. S. Kresge, Mo.App., 103 S. W.2d 523, as its principal authority that error was committed. In that case the trial court sustained the defendant's motion for a new trial upon the ground that the court had erred in refusing to grant a continuance after granting the plaintiff leave to amend her petition to include an allegation that the accident had aggravated a pre-existing arthritic condition. In affirming the judgment this court said (103 S.W.2d 526):

"* * * the question of whether an amendment to a pleading should be allowed during the course of a trial, and, if so, whether a continuance should follow if applied for, are all matters reposing largely in the sound discretion of the trial court."

In so holding the opinion followed the prior decisions of the Supreme Court that:

"* * * Such discretion of the trial court is rarely interfered with by the appellate courts of this state, and then only when the trial court has palpably abused its discretion in permitting or refusing the amendment to be made. Allen v. Ranson, 44 Mo. 263, 267, 100 Am.Dec. 282; Joyce v. Growney, 154 Mo. 253, 263, 55 S.W. 466; Clark v. St. Louis Transfer Railway Co., 127 Mo. 255, 269, 30 S.W. 121; Little River Drainage District v. St. Louis, M. & S. E. Railroad Co., 236 Mo. 94, 113, 139 S.W. 330; Lee v. W. E. Fuetterer Battery & Supplies Co., 323 Mo. 1204, 23 S.W.2d 45, 57." Dyer v. Harper, 336 Mo. 52, 77 S.W.2d 106, 109.

At common law the amendment of pleadings was so exclusively within the discretion of the trial court that its action in allowing or refusing the amendment could not be reviewed by the appellate court. Lee v. W. E. Fuetterer Battery & Supplies Co., 323 Mo. 1204, 23 S.W.2d 45, 47. The former sections of our Code dealing with amendments of pleadings, and the question of variance, Sections 969–974 RSMo 1939, have been said to be merely declarative and in aid of the common law. Lee v. W. E. Fuetterer Battery & Supplies Co., supra, and it would seem to follow that our present Sections 509.490 and 509.500 RSMo 1949, V.A.M.S., though revised, have the same objective.

While defendant claimed surprise when leave was requested to make the amendments, it did not request a continuance, but moved for a mistrial. Were we to adopt a critical attitude towards the action it requested the trial court to take, it might be said that having failed to ask for a continuance, as Section 509.500 contemplates, the defendant is not now in a position to complain. But a litigant's rights should not be decided on so narrow a ground. The defendant did claim that it was surprised and

that it would be prejudiced in maintaining its defense. Hence for the purpose of this opinion we will treat its motion for a mistrial as the equivalent of a motion for a continuance.

In Davis v. Kansas City Public Service Co., 361 Mo. 61, 233 S.W.2d 679, error was alleged because the trial court had permitted the plaintiff to amend her petition during the course of the trial to include the claim of a fractured vertebra and had overruled defendant's verified application for a continuance, and also because the trial court had admitted evidence as to the aggravation of plaintiff's pre-existing arthritic condition, of which there was no allegation in the petition. Pointing out that it was not necessary for it to say whether the allegations of general damages as originally pleaded included the fractured vertebra and the arthritic condition, the Supreme Court said (233 S.W.2d 683), that the essential question for its determination was:

"* * * whether the evidence was so prejudicial, in the circumstances, to the defendant's right to a fair trial that a retrial of the cause should be ordered."

At the time the first amendment was made in the instant case the only claim of prejudice advanced by defendant was that in making his examination of the plaintiff its physicians had been restricted to the injuries then complained of in plaintiff's petition. Upon the completion of plaintiff's case counsel for defendant then claimed defendant had been prejudiced because the insurance company which counsel represented had not given him its complete file. The basis for this latter complaint obviously was not initiated by the plaintiff, and cannot be said to result from any action of the trial court, or the plaintiff. In its brief defendant points out no other manner in which it was prejudiced, but contends only that if the plaintiff's amendments had been made prior to trial it could have prepared itself to meet the issues, to cross-examine plaintiff's medical experts, and to have its

medical expert examine and be prepared to testify as to the added special injuries. Hence, in the light of Davis v. Kansas City Public Service Co., supra, our inquiry is limited to the question of whether defendant was prejudiced in the respects of which it complains.

The only special injuries added by the amendments were those relating to the pre-existing arthritic condition of plaintiff's right shoulder and right knee, which two of plaintiff's medical experts concluded had been aggravated by his fall. The record shows that counsel for defendant conducted an able and exhaustive cross-examination of both of such medical witnesses on the subject, during which counsel displayed his obviously extensive knowledge of the medical profession's conclusions of the causes, development and treatment of arthritis. It cannot be seriously contended, in view of the record, that defendant was deprived of its right to cross-examine plaintiff's medical witness on the issue of traumatic arthritis.

Nor does the record bear out defendant's claim that its medical expert was restricted in the examination he made of plaintiff prior to the trial. Dr. E. C. Funsch, defendant's medical expert, testified on cross-examination:

"Q. Doctor, when you examined this man were you apprised of any complaints he may have set forth in his petition? A. No, I didn't have anything on him, sir.

"Q. You had no past history of any injury he might have sustained? I'm talking about on the examination you made on November 18th, did you have any past history of the injuries sustained by this man as alleged in his petition? A. The only information I had is what I got from him."

It is apparent from the foregoing that the Doctor was unaware of any limitation contained in the court's order for the examination, that he did not have any knowledge at the time of the allegation of injuries set

forth in the petition, and that he was not restricted in any way in the examination he made. In short, he made a thorough examination and reached his own conclusions regarding those parts of his body of which plaintiff was complaining. Furthermore, the Doctor testified that he had full and complete X-rays made of plaintiff's right shoulder and that he found what he termed degenerative arthritis in both the plaintiff's right shoulder and right knee. He attributed this arthritis to the aging process, and not traumatic in origin. However, he did admit that a severe trauma would lengthen the healing of an arthritic knee in a man 63 years old, and that the trauma could aggravate the arthritis. On redirect examination he illustrated the degenerative process as a roughening of the joints, and compared it to the rusting of a hinge. Thus it is clear that defendant's medical expert found the arthritic condition prior to trial and that he was fully prepared to testify regarding it. It was indicated during a colloquy between the respective counsel that defendant's counsel had a report from Dr. Funsch of the results of the examination he made. It is a reasonable inference that the report contained the conclusions reached by the Doctor as to plaintiff's physical condition, including the arthritic condition Dr. Funsch found, which he attributed to natural causes.

Under the circumstances, it cannot be said that the trial court, in permitting the amendments and overruling defendant's motion for a continuance, abused the wide discretion allowed it. Furthermore, in view of the manner in which the defendant was prepared to and did meet the issue of plaintiff's arthritic condition, we can only conclude that defendant was not prejudiced in maintaining its defense. Davis v. Kansas City Public Service Co., supra; Crockett v. City of Mexico, 336 Mo. 145, 77 S.W.2d 464; Turnbow v. Kansas City Rys. Co., 277 Mo. 644, 211 S.W. 41.

The Commissioner accordingly recommends that the judgment be affirmed.

PER CURIAM.

The foregoing opinion by DOERNER, C., is adopted as the opinion of the Court. The judgment is accordingly affirmed.

WOLFE, P. J., and ANDERSON and RUDDY, JJ., concur.