MAE MILLIGAN, Administratrix of Estate of FRANK MILLIGAN, v. KANSAS CITY LIGHT & POWER COMPANY, Appellant.

In Banc, July 31, 1924.

1. **APPEAL: Dismissal: Full Transcript.** The appeal will not be dismissed on the ground that appellant printed and filed a full transcript of the record instead of an abstract thereof.

2. **NEGLIGENCE: Uninsulated Electric Wires: Duty to Employees.** The rule, often announced, that it is the duty of a company handling and distributing the highly-dangerous force of electricity to use every available precaution to insulate its wires at all points where people have a right to be, and to use the utmost care to keep them so insulated, applies to the public generally, and not to employees of the company, such as linemen, engaged in transferring a feeder wire of high voltage from one insulator on a cross-arm to another.

3. ———: ———: ———: **Customary Use.** The plaintiff, a lineman and an employee of defendant, standing on a wooden ladder, was engaged in untying, from the second insulator on a wooden cross-arm at the top of an iron pole, a 4000-volt feeder wire, uninsulated but covered with weather-proofing, for the purpose of transferring and tying it to the insulator next to the pole, and as he was attempting to untie the wire with pliers either he or the ladder slipped, and he came in contact with the feeder wire and was injured. A number of rubber gloves, generally used by others engaged in the same character of work and furnished by the company, were in a box on a wagon that accompanied the workmen, and plaintiff testified that the gloves were at his disposal and would have

Milligan v. Light & Power Co.

furnished him adequate protection, but he thought he did not need them. He also testified that precisely the same character of wire was used in like construction by other employers operating similar plants, and the evidence showed without contradiction that wires with only weather-proof covering were in general use for outdoor overhead construction by companies engaged in operating similar electric light and power plants; and plaintiff further testified that the available safety devices furnished by defendant to its employees were not only such as were in general use, but were entirely adequate to protect them from injury. *Held*, that defendant's failure to insulate said wire was not negligence *per se*, and that it cannot be held as a matter of law that the defendant owed its employees who were required to work in proximity to its electrically-charged wires the duty of so insulating them that the current could not escape and inflict injury; and as such was the sole basis and his only theory of defendant's liability for plaintiff's injury, as shown by the allegations of his petition and the instruction given, a verdict and judgment in his favor cannot stand.

4. ―――: ―――: **Safe Place for Workmen.** The employer owes to his employees the duty to make safe the place where they are required to perform their service, but he is not an insurer in that respect; he is bound to exercise only reasonable care, the degree depending upon the danger attending the work, and the standard being the care exercised by prudent employers under similar circumstances. Although the place where the lineman was required to work was dangerous and the electrical company might have made it reasonably safe by insulating its wires, if it did not, but followed the usage that obtained among employers generally under similar circumstances and furnished said employee safety appliances which would. have fully protected him if he had used them, and thereby it adopted means that were efficient for his protection and safety, it discharged its full duty to him.

Headnote 1: Appeal and Error, 4 C. J. sec. 2380 (1926 Anno). Headnotes 2 and 3: Electricity, 20 C. J. secs. 42, 67. Headnote 4: Master and Servant, 26 Cyc. 1102, 1108.

Appeal from Jackson Circuit Court.—*Hon. O. A. Lucas, Judge.*

REVERSED AND REMANDED.

*John H. Lucas, William C. Lucas* and *Ludwick Graves* for appellant.

(1) The trial court erred in refusing to sustain appellant's objection to the introduction of any evidence

at the beginning of the trial, and in refusing to give the demurrer at the conclusion of the evidence of the respondent, and in refusing to give the peremptory request for a verdict at the conclusion of all the evidence in the case. Under the pleadings and the evidence the respondent is not entitled to recover: (a) The petition does not state facts necessary to confer on respondent the right of action, and states mere conclusions, and hence states no cause of action. 18 R. C. L. 544-546; Abbott v. Mining Co., 112 Mo. App. 550; Mueller v. Shoe Co., 109 Mo. App. 506; Pavey v. Railroad, 85 Mo. App. 221; Renovich v. Construction Co., 264 Mo. 43. And states mere conclusions. Hollis v. Light & Power Co., 224 S. W. 158; Barber Asphalt Paving Co. v. Field, 188 Mo. 182; Booth v. Cheek, 253 Mo. 119; Martin v. Castle, 193 Mo. 183. (b) There was no evidence of negligence upon the part of the appellant. The effect of so holding was to make the appellant an insurer and destroy the doctrine of actionable negligence. The master is not an insurer. Van Bibber v. Swift & Co., 228 S. W. 75; Flack v. Santa Fe, 285 Mo. 48. (c) Deceased assumed the risks incident to his employment. Junior v. Elec. Light & Power Co., 127 Mo. 79; Biddlecom v. Nelson Grain Co., 178 S. W. 750; Roberts v. Tel. Co., 166 Mo. 370; Shelton v. Light & Power Co., 258 Mo. 534; Flack v. Ry. Co., 285 Mo. 50. (2) Manifest error was committed by the trial court in giving instructions. They are erroneous, misleading and contradictory. (a) Instruction number 1 broadens the issues in that it submits that appellant owed deceased the highest degree of care and foresight, while the petition does not charge the duty of the highest degree of care and foresight. Daniels v. Prior, 227 S. W. 105; Champion Coated Paper Co. v. Shilkee, 237 S. W. 111; Degonia v. Railroad, 224 Mo. 589; Stidd v. Railroad, 236 Mo. 382, 400; Schumacher v. Breweries Co., 247 Mo. 162; State ex rel. v. Ellison, 270 Mo. 653. (b) Instruction number 2 omits issues

tendered in the answer as to the use of safety appliances, and singles out the use of rubber gloves; when the answer and evidence showed that not only rubber gloves were used, but rubber blankets and lineman's protectors were furnished. Clark v. Hammerle, 27 Mo. 155; Wingfield v. Railroad, 257 Mo. 347, 372; Hollis v. Light & Power Co., 224 S. W. 158; Van Bibber v. Swift & Co., 228 S. W. 69.

*Butcher & Knoop* for respondent.

(1)  Where no demurrer was filed in the trial court, the petition is good, if it indicates the existence of a right of action in the plaintiff. Snyder v. Wagner Electric Mfg. Co., 223 S. W. 914; Young v. Iron Company, 103 Mo. 324; Thompson v. Stearns, 208 Mo. App. 346. (2)  The petition is sufficient. It was the duty of the appellant to use every accessible precaution to insulate its wires at points where people are required to be and to use the same care to keep the wires so insulated. Geisman v. Missouri-Edison Electric Co., 173 Mo. 654; Kile v. Union Electric Light & Power Co., 149 Mo. App. 354; Sudmeyer v. United Railways Co., 228 S. W. 64; Van Trebra v. Gaslight Co., 209 Mo. 648; Snyder v. Wagner Electric Mfg. Co., 223 S. W. 911; McLaughlin v. Electric Light Co., 100 Ky. 173; Hill v. Light & Power Co., 260 Mo. 43; Overall v. Electric Light Co., 47 S. W. 442. If the portion that the appellant claims is a mere conclusion be treated as surplusage, there still would remain sufficient facts to constitute a general allegation of negligence and that would be sufficient to support a judgment. Heckfuss v. Packing Co., 224 S. W. 99; State ex rel. v. Reynolds, 287 Mo. 697. (3)  Plaintiff proved that he was rightfully upon the pole; that he came in contact with defendant's wire; that when he did so there was a fire at the point of contact and plaintiff's hand and glove were burned and he was rendered unconscious.

This makes a prima-facie case. Van Trebra v. Gaslight Co., 209 Mo. 648; Sudmeyer v. United Railways Co., 228 S. W. 64; Geisman v. Missouri-Edison Electric Co., 173 Mo. 678; Hill v. Light & Power Co., 260 Mo. 63; Clark v. Railroad, 234 Mo. 396. It was not necessary for plaintiff to show that the insulation was off of the wire at the point of contact. Van Trebra v. Gaslight Co., 209 Mo. 659. (4) There is no assumption of risk by the servant of any danger or injury flowing from the master's negligence. Sudmeyer v. United Railways Co., 228 S. W. 68. The servant only assumes such risks as are incident to the service after the master has performed his duties. Although the dangers may be obvious, if this is due to lack of care on the part of the master, the servant does not assume the risk. Williamson v. Light & Power Co., 219 S. W. 904; Yongue v. Railroad, 133 Mo. App. 153. The servant does not and cannot assume the risk caused by the master's neglect. Bradly v. North Central Coal Co., 167 Mo. App. 177. (5) The proximate cause of Milligan's injuries was the failure of appellant company to properly insulate its wires and not any possible slipping of Milligan or the ladder on which he was standing. Trout v. Laclede Gas Light Co., 151 Mo. App. 207; Sudmeyer v. United Railways Co., 228 S. W. 64; Musick v. Dodd Packing Co., 58 Mo. App. 333. (6) Plaintiff's instruction numbered 1 properly declared the law. Campbell v. Traction Co., 178 Mo. App. 527; Hill v. Light & Power Co., 169 S. W. 351; Geisman v. Missouri-Edison Electric Co., 173 Mo. 673.

RAGLAND, J.—This is an appeal from a judgment for $10,000, rendered April 15, 1921, in favor of one Frank Milligan and against the Kansas City Light & Power Company, for personal injuries sustained by the former while in the latter's employ. The cause was argued and submitted in Division Two of this court at the April term, 1923, and an opinion was written. On the dissent of one of the judges of that division the cause was transferred to Court en Banc.

Milligan died on May 10, 1922, pending this appeal, and his administratrix was substituted as respondent. To avoid confusion of statement he will be referred to as the plaintiff, and the appellant, Kansas City Light & Power Company, as the defendant.

Plaintiff was a lineman. At the time of his injury he was at work on a pole which was one of a line of poles extending east and west on the north side of Thirty-first Street in Kansas City. It was an iron pole eighteen feet high, with a wooden extension of five and one-half feet at the top. On the iron pole just below the wooden extension there were two iron cross-arms; on the wooden top there were two wooden cross-arms, from fourteen to sixteen inches apart. The lower wooden cross-arm was approximately two and a half feet above the upper iron cross-arm. The iron cross-arms carried the wires of the Kansas City Railways Company and the wooden ones those of the defendant. One of defendant's wires, a 4000-volt feeder wire, was carried on the south side on the top wooden cross-arms of the line of poles, attached to the second pin from the pole. This wire was being transferred to the pin next to the pole.

The crew engaged in the work of transferring the feeder wire consisted of a foreman, two linemen (plaintiff and one Ebeck), a ground man and a wagon driver. The manner of doing the work was this: A wooden ladder was put up between the wires of the Railways Company so that the top rested against the top iron cross-arm on the pole; a lineman then climbed the ladder and, while standing on one of the upper rounds, unwound the tie-wire holding the feeder wire to the insulator on the outer pin, moved that wire to the inside pin and then tied it. The two linemen alternated in doing the work, one of them taking one pole and the other the next.

On the occasion of plaintiff's injury he climbed the ladder and stood on the second round from the top preparatory to making a transfer of the feeder wire from the outer pin to the inner one on the top wooden cross-

arm. His shoulder was about even with that cross-arm. His feet, on the wooden round of the wooden ladder, were, as to elevation, about half way between the two iron cross-arms. The space between the closest wires where he had to work was thirty-six inches. When he got into the position just described he put his safety belt around the pole, took his pliers in his right hand and unwound the end of the tie-wire on one side of the insulator. He then placed his pliers in his left hand and reached over to untie the other side. As he did so either he or the ladder slipped so that his feet landed on an iron cross-arm. He thereby became grounded and instantly received the current from the heavy voltage feeder wire. His injuries from the shock and burns were severe, the most serious being an impairment of vision.

The feeder wire was uninsulated. It was merely covered with a composition designed chiefly to protect it from the elements. This weather-proofing, however, was in perfect condition. The evidence showed without contradiction that wires with only such covering, that is, weather-proof insulation so-called, were in general use for outdoor overhead construction by companies engaged in operating electric light and power plants like that of defendant.

Defendant furnished its employees who were required to work in and about or with live wires the same devices for protection that were used generally by others engaged in the same character of business. Among these were rubber gloves and rubber blankets. There were a number of each in a box or case on the wagon which accompanied the crew in their work of transferring the feeder wire. But neither Ebeck nor plaintiff used them. Plaintiff stated on the witness stand that rubber gloves were at his disposal and would have furnished him adequate protection, but he thought that he did not need them. Ebeck who was a witness for plaintiff said that the gloves were useless because they had holes in them. It is fairly inferable from his and plain-

tiff's testimony, however, that they did not use the gloves because they thought the wooden ladder on which they worked made it unnecessary.

The alleged negligence on which plaintiff based his action was pleaded as follows:

"That the said wires had been insufficiently insulated and that the insulation so used had been allowed and permitted by defendant to become defective and in a condition dangerous to human life and was so worn and defective as to fail to afford protection against the electricity carried on said wires; that the aforesaid insufficient insulation and the defective, dangerous and worn condition thereof which caused plaintiff's injuries, hereinafter mentioned, was well known to defendant, or in the exercise of due and proper attention and diligence in the care thereof the defendant should have so known; that while plaintiff was at work and engaged as aforesaid, he came in contact with the wires of defendant, which had been insufficiently insulated and had been allowed and permitted by defendant to become defective in insulation, dangerous and worn as aforesaid, and by reason of the carelessness and negligence of the defendant, as aforesaid, a high voltage of electricity passed from said wires into plaintiff's hand and body, thereby severely, painfully and permanently injuring plaintiff as hereinafter stated."

In plaintiff's principal instruction the jury were told "that it was the duty of the defendant to use and exercise the highest degree of care and foresight to have and keep its wires, which were charged with a current of electricity, such as to be dangerous to human life and safety, if exposed, so insulated or guarded as to prevent injury to a person in its employ by contact therewith while in the performance of his duties."

I. Respondent has filed a motion to dismiss the appeal on the ground that appellant printed and filed

**Abstract:**
**Full Transcript.** a full transcript of the record instead of an abstract thereof. In view of the ruling in Frohman v. Lowenstein, 303 Mo. 339, the motion must be overruled.

II. Appellant's main contention is that on the trial below it was entitled to a directed verdict. This for the twofold reason, as it alleges, that **Uninsulated Electric Wire: Duty to Employee.** the petition did not state a cause of action, nor did the evidence tend to establish one.

It is patent from the record that plaintiff's action proceeded on the theory that the failure of defendant to insulate its wires was negligence *per se,* that as a matter of law defendant owed its employees who were required to work in proximity to its electrically-charged wires the duty of so insulating those wires that the current could not escape and inflict injury. Plaintiff contented himself with showing the non-insulation, contact while at work within the scope of his employment and the resulting injury. While he was doing this defendant drew out of his witnesses on cross-examination the fact that precisely the same character of wire was used in like constructions by other employers operating similar plants, and the further fact that the safety devices furnished by defendant to its employees were not only such as were in general use, but that they were entirely adequate to protect them from injury. These facts the plaintiff ignored. Whether he deemed them irrefutable, or merely irrelevant, does not appear. The theory of liability upon which plaintiff tried his case seems to be based on the ruling in Geisman v. Missouri-Edison Electric Co., 173 Mo. 654; Ryan v. Transit Co., 190 Mo. 621; Von Trebra v. Gas Light Co., 209 Mo. 648; Clark v. Railroad, 234 Mo. 396 and Sudmeyer v. United Rys. Co., 228 S. W. 64. These cases all hold that it is the duty of a company handling and distributing the highly dangerous force of electricity to use every available precaution to

insulate its wires at all points where people have a right to go, and to use the utmost care to keep them so insulated, but all, except the one last mentioned, were dealing with the duty which such a .company owes to the public generally, and not to its employees. The distinction between them and the case at bar is manifest. The public have neither warning of the hidden peril of an electrically-charged wire, nor the means of protecting themselves against it; while employees, circumstanced as was the plaintiff, are not only fully advised as to the character of the wires about which they work, but are supplied with safety appliances which afford ample protection from injury.

While an employer owes to his employees the duty to make safe' the place where they are required to perform their services, he is not liable as an insurer in that respect. He is bound only to exercise reasonable care, the degree depending upon the danger attending the employment, and the standard being the care exercised by prudent employers under similar circumstances. The facts of the instant case clearly bring it within the influence of this universally accepted doctrine. The place where plaintiff was required to work was dangerous. The defendant might have made it reasonably safe by insulating its wires, if that were practicable in the construction of which they formed a part. Instead of doing that, however, it followed the usage that obtained among employers generally under similar circumstances. It furnished its employees, including plaintiff, with safety appliances which would fully protect them. It must be held, under the facts disclosed by this record, that in so doing it discharged its full duty to them.

In Sudmeyer v. United Rys. Co., supra, the employee was engaged in mending a broken trolley wire while standing on an insulated repair truck. The trolley wire and a sub-feed wire attached to it carried a current of five hundred and fifty volts. The trolley wire was necessarily uninsulated, but the sub-feed wire was, or had

been,, insulated. In making such repairs it was not customary to use rubber gloves, because the rubber-wheeled truck was supposed to afford full protection. On the occasion of the injury giving rise to that case, however, the workman by some unknown means became grounded and when he took hold of the sub-feed wire received a shock which caused his death. In holding that the failure to keep the sub-feed wire properly insulated made a case for the jury on the question of defendant's negligence, it was said:

"It could be insulated, and was insulated by the defendant, so that its employees, when repairing it or coming in contact with it while repairing the trolley wire, would have the double protection of an insulated wire, as well as an insulated instrument or platform upon which to stand while doing the work. That persons of ordinary prudence in this dangerous business would give their employees this double protection when practicable is conclusively proven by the fact that defendant did insulate its feed wires, and, so far as the evidence shows, such construction is not extraordinary or uncommon."

Whether it was practicable to so effectually insulate the wire in the construction involved in this case that the electrical current could not have escaped from it was not shown. It does appear, however, that defendant made no effort to insulate its wires; that it adopted other means which were efficient, to protect its employees; and that in both these respects it followed the custom and practice which generally obtained among employers under similar circumstances. These facts seem to distinguish this from the Sudmeyer Case. In any event that case is not an authority for the proposition that an employer, such as the defendant, under any and all circumstances and conditions, owes to its employees the absolute duty to insulate its wires; it merely holds that a failure to insulate, under the circumstances which it details, will support a finding of negligence.

Ebeck, one of plaintiff's witnesses, casually re-marked while on the witness stand that the rubber gloves furnished by defendant were old and had holes in them. This statement has not been overlooked; under the issues it is unimportant, if true. The action was based solely upon the alleged negligent failure to insulate the wires, and not in any respect upon a failure to inspect and re-place as they became defective the safety appliances furnished.

Other questions raised are largely incidental to the principal one which has been disposed of and need not be considered. The judgment of the circuit court is reversed and the cause remanded. All concur.