WILLIAM H. SCHEER v. THE TRUST COMPANY OF ST. LOUIS COUNTY and THE FIRST NATIONAL BANK OF CLAYTON, Appellants.—49 S. W. (2d) 135.

Division Two, April 8, 1932.

150

*Joseph C. McAtee* and *Henry Higginbotham* for appellants.

154

*Eliot, Blayney & Bedal* for respondent.

COOLEY, C.—This is an action in the nature of a suit for money had and received, brought by plaintiff December 7, 1927, in the Circuit Court of St. Louis County. Defendants, appellants, are corporations. The transactions involved herein originated with the trust company. The bank was organized about 1923 by the trust company or its officers and to it the trust company turned over practically all of its assets, including the $13,000 note hereinafter referred to, the bank assuming ''certain'' of the trust company's liabilities, the liabilities specifically assumed not being more definitely shown. The trial court found that the bank was a ''subsidiary'' of the trust company, and if that relation, legally speaking, could exist the evidence justified that finding. This action is the outgrowth of transactions which began in 1914 and resulted in litigation that in one phase or another has been before this court four or five times heretofore.

Plaintiff recovered judgment for $12,780.67 and $918.07 interest from date of filing of suit on an alleged account, beginning with a payment of $4940 made by him February 28, 1914, at a trustee's sale under a deed of trust held by the trust company, at which sale the land covered by the deed of trust was bid in by one Walton for himself and Scheer. The remaining items of the alleged account were semi-annual interest payments on a $13,000 note given by Walton to the trust company in connection with the trustee's sale. The sale and the trustee's deed were subsequently held invalid and canceled in litigation following the sale. The pleadings on both sides are lengthy. The case was by agreement tried to the court without a jury. At the close of the evidence the plaintiff requested the court to state separately in writing its findings of facts and conclusions of law as provided by statute, which the court accordingly did. As the findings of facts substantially follow and epitomize the facts pleaded by plaintiff and shown by his evidence, we shall set out such finding in substance, quoting *verbatim* such portions as may be necessary to a clear understanding of controverted legal issues. The court found as follows:

One Sarah A. Massey, owner of a tract of 131 acres of land in St. Louis County executed her note for $16,850 and her deed of trust on said land, both dated February 11, 1911, to one Smith, a ''straw man'' acting for the trust company which furnished the money for the loan, the trust company being named as trustee in the deed of trust. Smith assigned the note to the trust company. Default was made in payment of the note and some interest and on February 28, 1914, the deed of trust was foreclosed, sale thereunder being made by George A. Bode, then sheriff, as successor trustee. Prior to the sale plaintiff herein and one Walton had verbally agreed to become joint

owners of the land if successful in bidding it in at the prospective trustee's sale and in furtherance of their agreement Walton had arranged with the trust company to borrow from it $13,000 and to secure same by deed of trust on the land.

Walton became the purchaser at the trustee's sale on February 28, 1914, at his bid of $17,605, and received a deed from Bode, acting trustee, conveying to him the land. In part payment of such purchase price Scheer, plaintiff herein, advanced $4,940 in cash and Walton and his wife Rebecca executed their note for $13,000 payable three years from its date, February 28, 1914, together with six semi-annual interest notes of $390 each, and a deed of trust on the land securing the loan. The notes were made payable to one Hollocher, an officer of the trust company, and were at once assigned to the trust company which had made the loan and in whose behalf the notes were taken. The trust company was named as trustee in the $13,000 deed of trust and by the assignment to it by Hollocher became also the owner and holder of the notes and security. The $4,940 cash paid by Scheer and the $13,000 note of Walton to the trust company aggregated $17,940, "the excess over $17,605, the amount bid at the sale, being represented by a commission of $325 paid to the trust company for the said $13,000 loan and $10 for an abstract."

Prior to the trustee's sale of February 28, 1914, the Hurst Automatic Switch & Signal Company (referred to as the Hurst Company) had become the owner of the land subject to the Massey deed of trust and Fred Hurst was its tenant. On April 8, 1914, the Hurst Company and Fred Hurst sued to set aside the trustee's sale, to cancel the trustee's deed made by Bode to Walton and the $13,000 deed of trust given by Walton to the trust company, for an accounting to determine the amount due on the Massey note held by the trust company and for general relief. The trust company, Hollocher, Walton and wife and Bode were named as defendants in that suit. The circuit court found for the defendants and dismissed the Hurst Company's bill but on appeal to this court the judgment was reversed and the cause remanded with directions to the circuit court to enter a decree setting aside the trustee's sale and deed of February 28, 1914, and the $13,000 deed of trust given by Walton and wife to the trust company and for an accounting between the parties and granting such reasonable time as to the circuit court should seem proper for the redemption of the property by the Hurst Company. The decision of this court on that appeal was rendered October 10, 1919, in Hurst Automatic Switch & Signal Co. v. Trust Co., 216 S. W. 954.

On March 26, 1920, the circuit court, upon a second trial of the Hurst Company's suit, entered a judgment setting aside the trustee's sale of February 28, 1914, and the Walton $13,000 deed of trust *on condition* that the Hurst Company within thirty days pay to the trust company the sum found to be due on the Massey note, then amount-

ing to $25,923.93, the court reserving jurisdiction for an accounting between the plaintiffs in that suit and Walton. Plaintiffs in that case again appealed and were again successful in this court, the cause being reversed and remanded with directions to the circuit court to first set aside the trustee's sale and deed to Walton and the $13,000 Walton deed of trust unconditionally and then proceed to hear and determine the claims of the parties for an accounting according to the views expressed in the opinion, and upon such determination, including the finding of the amount due the trust company on the Massey note and deed of trust, to allow the Hurst Company a reasonable time thereafter to redeem, said company not to be deemed in default until such time for redemption expired, whereupon, if the debt was not paid the trust company might foreclose the Massey deed of trust in such manner as it might be advised. The opinion of this court on the second appeal was rendered December 19, 1921, and is reported in 291 Mo. 54, 236 S. W. 58.

About January 1, 1918, after the first trial of the Hurst Company suit and before the decision of that appeal, Walton sold and conveyed to Scheer, the present plaintiff, his interest in the 131 acres of land. Thereafter and before the second trial, Scheer was joined as a party defendant with Walton, the trust company and others, in the Hurst suit. Prior to said sale by Walton to Scheer the former had paid the "carrying charges" (interest and commissions for renewals) on the $13,000 loan. After that sale Scheer paid such charges. Following the receipt of the mandate of the Supreme Court in the second appeal the circuit court set aside the trustee's sale and deed of February 28, 1914, and the Walton $13,000 deed of trust, as per the mandate, and then "an accounting was had as between the Hurst Automatic Switch & Signal Company and Fred Hurst on the one hand and Stonewall J. Walton and William H. Scheer, the plaintiff herein, on the other hand," and on May 11, 1922, the court entered its judgment on the accounting feature. The court found in favor of a number of individual defendants who had been brought in and with whom we are not here concerned. It found that the amount due the trust company on the Massey note was $28,917.96 and gave the Hurst Company ten days in which to pay same. It found that Walton and Scheer owed the plaintiffs in that case $8,552.72, in which was included $6,370 for the rental value of the land, they having had possession of it, from March 1, 1915, to March 1, 1922, and found that the plaintiffs in that suit owed Walton and Scheer $8,248.09 (for improvements, etc.), and gave the plaintiffs judgment for the difference, $304.63. On appeal to the Supreme Court by the plaintiffs that judgment was affirmed on June 10, 1924, in an opinion reported in 264 S. W. 406, that being the third appearance of the Hurst case here. Our mandate in that appeal was received and filed in the circuit court August 8, 1924.

While that third appeal was pending here, the Hurst Company having failed to pay the amount due on the Massey note, the trust company had applied for and obtained in the circuit court an order for the foreclosure of the Massey deed of trust and sale of the land and the appointment of a trustee, as the trust company, being the owner of the note, could not act as trustee. On August 9, 1924, the order of sale, upon application of the trust company, was renewed and one Willmann, then sheriff, was appointed trustee to make sale. Willmann duly advertised the land for sale and on September 3, 1924, sold it to plaintiff Scheer, he being the highest bidder, for the sum of $15,000, and executed a trustee's deed conveying the land to him.

Further appeals were taken to this court by the Hursts in fruitless attempts to prevent the appointment of Willmann as trustee and the foreclosure of the Massey deed of trust but they have no bearing upon the issues herein.

The $13,000 note given by Walton to the trust company February 28, 1914, was by its terms due in three years. It was "renewed" by extension of the time of payment for a like period of three years at the end of each three-year period thereafter, the last renewal or extension being in February, 1924. At each renewal or extension six interest notes of $390 each, representing the interest to become due, payable at semi-annual intervals, were given. These interest notes were paid when due except the two last maturing for which plaintiff did not recover. We quote the remainder of the court's finding of facts:

"That prior to the said foreclosure sale of September 3, 1924, plaintiff had arranged with the defendants herein to borrow $15,000 to be applied by plaintiff on any bid he might make at said foreclosure sale under the Massey deed of trust, and defendants loaned said sum to plaintiff, and plaintiff executed his notes for $15,000 principal, together with semi-annual interest notes, all to the order of F. J. Hollocher, who endorsed the same without recourse, which notes were secured by deed of trust executed by plaintiff and wife on the said 131 acres of land; that on March 26, 1925, plaintiff paid his indebtedness on said $15,000 notes and that the deed of trust was thereafter satisfied.

"That in connection with said sale on September 3, 1924, there was no agreement between plaintiff and the defendants, or either of them, by which, in the making of said $15,000 loan to plaintiff, plaintiff was to have credit for the payments theretofore made by Walton and/or plaintiff, or by both, growing out of the sale of February 28, 1914, which sale was thereafter set aside, nor was there any agreement with plaintiff that the defendants, or either of them, would not bid the amount then due under the said Massey note at the said public auction and foreclosure sale; nor was there any agreement that plaintiff was to strike a balance with the defendants, or either of them, and

pay the amount due after crediting said payments; that the $15,000 loan made to the plaintiff was not made on any accounting between the plaintiff and the defendants, or either of them; that the defendants had the right to bid whatever they chose at said sale of September 3, 1924, without the breach of any agreement made by them, or either of them, with plaintiff; and that the defendants, or either of them, at no time assigned to Walton or to plaintiff the Massey notes and deed of trust, but at all times held the same for their own account, and that all steps for the foreclosure of same, both at the sale of February 28, 1914, and at the sale of September 3, 1924, were taken by them in their own behalf and not in behalf of plaintiff or his assignor.

"That on March 2, 1927, Walton and wife assigned to plaintiff all their right to any and all claims which they, or either of them, might have against the defendants herein for and on account of all matters arising out of the purchase by said Walton of the said 131 acres of land at trustee's sale on February 28, 1914.

"That the plaintiff and/or Walton, or both plaintiff and Walton, paid to the Trust Company of St. Louis County and/or the First National Bank of Clayton the sums of money at the times, for the purposes and in the amounts as stated in Plaintiffs' Exhibit A attached to the petition, with the exception that the items of September 3, 1924, and October 13, 1924, are not for payment of costs as therein stated.

"That the question of an accounting as between the plaintiff herein and plaintiff's assignor, Walton, and the defendant Trust Company was never an issue in the litigation brought by the Hurst Automatic Switch & Signal Company and Fred J. Hurst as plaintiffs against Stonewall J. Walton and the defendant Trust Company and others, and that in said litigation no judgment or order was rendered relative to an accounting between the plaintiff herein and Walton on the one hand and the defendant Trust Company on the other hand."

Exhibit A, referred to in the court's findings, is in the form of an account, the first item of which is: "1914. Feb. 28th. To cash paid in excess of $13,000 note dated February 28, 1914, payable to the order of F. J. Hollocher and executed by Isaac L. Walton (Stonewall J. Walton?) and Rebecca his wife, $4,940.00." The next item, under date of August 28, 1914, is: "To payment of interest of above $13,000 principal note, $390." Then follow similar items of interest payments under dates six months apart to and including August 28, 1923, with three items for commissions paid on "renewals" (extensions) of the $13,000 note and a small item for revenue stamps. There are some further items dated September 3, 1924, and thereafter, following and having relation to the second foreclosure which were abandoned at the trial, were not allowed and need not be noticed. The

court found for plaintiff for all of the items of the account to and including the interest payment of August 28, 1923.

The joint amended answer of defendants after a general denial pleaded at length the facts relative to the prior relations of the parties, the preceding litigation and the payments made to the trust company substantially as pleaded by plaintiff and as found by the court and in substance tendered three defenses, viz., 1st, that at the time of the second foreclosure, September 3, 1924, there was due the trust company on the Massey note with accumulated interest, $34,-270.95 and that plaintiff, desiring to become the purchaser at that sale, requested the trust company to finance him to that end, to give him credit for the payments theretofore made by Walton on account of the sale of February 28, 1914, to refrain from bidding the amount of its claim under the Massey note, and agreed with the trust company to "strike a balance" with it and to pay the amount due "after crediting the Walton payments," to which the trust company agreed and because thereof refrained from bidding the full amount of the Massey indebtedness. This defense seems to have been understood and treated by court and counsel as in effect an alleged agreement that plaintiff and the trust company would treat the $13,000 note as a subsisting obligation representing what was really due it or what it demanded on account of the Massey deed of trust and that the latter would loan plaintiff enough to pay that note and the interest then due thereon together with costs and expenses of sale, retaining payments theretofore made.

The second defense was that plaintiff's alleged cause of action was barred by the five-year Statute of Limitations as to all items paid more than five years prior to December 7, 1927, the date suit was filed.

For their third defense defendants pleaded that the matters involved were *res adjudicata* by reason of the accounting which was had following the second appeal of the Hurst Company suit.

■ I. It is plaintiff's contention, with which we agree, that when the trustee's sale of February 28, 1914, was set aside there was a failure of the consideration for the payments made by plaintiff and his assignor Walton and received by the trust company through that sale and that the beneficiary could not retain both the proceeds of that sale and the proceeds of the sale of the same property under the same deed of trust made on September 3, 1924. When the trustee's sale of February 28, 1914, and the Walton $13,000 deed of trust were set aside the trust company was restored to its ownership of the Massey debt and its security which it thereafter continued to own as though the transactions of February 28, 1914, had not occurred, and when the Massey deed of trust was again foreclosed on September 3, 1924, it still owned that note with its accumulated interest secured by its original security. Manifestly the consideration for the payments made by plaintiff and Walton had failed and the recipient of those pay-

ments could not be entitled to keep the money so paid and also the Massey note and its lien on the land. [See McLean v. Martin, 45 Mo. 393; Berry v. Stigall, 253 Mo. 690, 162 S. W. 126; 35 C. J. p. 114, secs. 198, 199; 16 R. C. L. p. 103, sec. 75.]

The circuit court held in its conclusions of law that there had been no accounting between plaintiff and the defendants or either of them "in connection with the sale of September 3, 1924, and the loan of $15,000 made to plaintiff by defendants." That conclusion necessarily follows from the finding of facts upon the issue made by defendants' first above mentioned defense. There was conflicting evidence upon that issue. The court's finding of facts thereon is supported by substantial evidence. ■ The action being one at law the court's finding of facts in such circumstances has the effect of a special verdict and will be taken as conclusive of the facts so found. [Freeman v. Moffitt, 119 Mo. 280, 294, 25 S. W. 87; Idalia Realty & Development Co. v. Norman's S. E. Ry. Co. (Mo.), 219 S. W. 923, 929; State ex rel. Friedman v. Purcell, 131 Mo. 312, 33 S. W. 13.] That defense therefore fails.

II. Upon the question of the Statute of Limitations we think plaintiff's cause of action did not arise until the trustee's sale and the deed of February 28, 1914, and the $13,000 deed of trust given by Walton were definitely set aside by the decision of the Supreme Court on the second appeal of the Hurst Company suit and the entry of judgment by the circuit court pursuant to the Supreme Court's mandate. That decision, as above stated, was rendered December 19, 1921. Though not stated in the court's findings of facts the record shows that the circuit court entered judgment pursuant to the mandate of this court on January 18, 1922, setting aside the trustee's sale and deed and the deed of trust. For the purpose of this case it is immaterial which of those two dates is taken as controlling. While the question of the validity of the 1914 foreclosure sale was in litigation and until that question was thus definitely determined against him, plaintiff could not have maintained an action for the return of the money paid by him and his assignor on account of his purchase at that sale.

In Green v. Spokane County, 55 Wash. 308, 104 Pac. 510, 25 L. R. A. (N. S.) 31, a judgment had been rendered against the plaintiff upon which execution had issued and certain money had been collected thereon from the plaintiff. Later the judgment was reversed by the Supreme Court on appeal and thereafter, within the statutory limitation period of three years after such reversal but more than three years after the collection and appropriation of the money, the plaintiff sued to recover it. The defendant sought to interpose the bar of the Statute of Limitations claiming that the statute ran from the time the money was appropriated. The court said:

164

"... it is earnestly urged by the respondent that the cause of action arose when the money was wrongfully taken or appropriated. In one sense that is true, but rules of law are not intended to work a deprivation of rights, and should not be so construed when it can be avoided; and, while perhaps in one sense the cause of action might be said to have arisen when the money was appropriated by the county, in a larger and juster sense it did not arise until such time as a suit for recovery could be instituted and maintained."

█ The court held that the statute did not begin to run until the reversal by the Supreme Court of the judgment under which the money had been collected. Cases cited in the note in 25 L. R. A. (N. S.) 31, show that courts which have considered the question on similar facts have held in line with the Washington Supreme Court. See, also, announcing the same principle, Wootton v. Jones (Tex.), 286 S. W. 680; Hawley v. Simons, 74 Ill. App. 222; First National Bank v. Avery Planter Co., 69 Neb. 329; Garber's Admr. v. Armentrout, 32 Grattan, 235; Simmons v. Simmons, 91 W. Va. 32. While in this case the money was not paid or collected on a judgment we think the principle underlying the decisions above cited is applicable. See also Hewitt v. Steele, 136 Mo. 327, 38 S. W. 82, holding that under our statute permitting the bringing of another action within one year after nonsuit suffered, where appeal is taken the nonsuit is suffered within the meaning of the statute only when the circuit court's judgment is affirmed on appeal.

This suit, however, was not brought until December 7, 1927, more than five years after such accrual of plaintiff's cause of action, and plaintiff's right to recover is barred unless there were facts avoiding the running of the statute. Such facts must be found, if at all, elsewhere than in the litigation over the accounting and the Hurst Company's efforts to prevent the second foreclosure subsequent to the above mentioned decision of this court of December 19, 1921. That continued litigation may explain but it does not legally excuse plaintiff's delay in bringing this suit. It did not present any legal obstacle to the institution and maintenance by plaintiff of a suit to recover the money herein sued for.

█ Plaintiff contends that all of the items recovered constituted an account the last item of which was the interest payment of August 28, 1923, paid within five years prior to bringing suit and that the statute did not begin to run until that date, relying particularly on Section 1315, Revised Statutes 1919, Section 860, Revised Statutes 1929 (2 Mo. Stat. Ann., p. 1136), providing that the cause of action shall not be deemed to accrue when the wrong is done or the technical breach of duty occurs but when the resulting damage is sustained and capable of ascertainment, "and, if more than one item of damage, then the last item, so that all resulting damage may be recovered, and full and complete relief obtained." The statute in its present form was in

force (Sec. 1315, R. S. 1919) when, as we hold, plaintiff's cause of action arose. Defendants, on the other hand, assert that the payments did not constitute an account, citing Section 862, Revised Statutes 1929, but that each payment constituted a separate, independent transaction and that the statute ran as to each from the time it was made.

We are of the opinion that the payments of interest and commissions for extensions of time on the $13,000 note should be treated as an open or running account and were not barred. They all had direct reference to and connection with the note, were "morally connected" therewith and with each other (Smith v. Collins (Mo. App.), 247 S. W. 457, 459, and cases cited) and were made on account of the note. We attach no importance to the fact, urged by defendants, that separate interest notes for each installment of interest had been given. The payments were none the less periodical payments of interest on the principal note. When the 1914 trustee's sale and the $13,000 deed of trust were set aside as above pointed out, plaintiff's cause of action arose and he might then have sued to recover the payments. None were then barred. Then, as the circuit court found—a finding of fact well sustained by the evidence—plaintiff refused to pay interest further, whereupon defendants requested him to continue paying the interest so as to keep the note an apparently live obligation, to which plaintiff consented and which he did. That the subsequent payments were made for defendants' accommodation is clear.

In National Bank of Commerce v. Laughlin, 305 Mo. 8, 264 S. W. 706, the defendant had given to the plaintiff a note for the accommodation of the plaintiff bank upon which, also for the bank's accommodation, he had made various payments. In a suit by the bank for the balance claimed to be due on the note the defendant denied liability, pleading the facts showing the note to have been for the bank's accommodation and without considration, and by counterclaim sought recovery from the bank of the payments he had made. He recovered. Some of the payments had been made more than five years prior to the filing of the counterclaim. Discussing the Statute of Limitations this court said, 305 Mo. l. c. 41, 42:

"But in addition, Laughlin testified that these sundry payments were to be put into a savings account for him by the bank. In this we have an open running account by an express agreement of the parties. On the other hand the advances of money at intervals to the bank for its accommodation, and without a *quid pro quo,* would by implication create an open running account, so that the last item would draw to it all those which chance to fall beyond the period of limitations;" citing cases and quoting from Boylan v. Steam Boat Victory, 40 Mo. l. c. 251 as follows:

" 'Where it is specially agreed or impliedly understood between the parties that the account is to be kept open and continued as one and the same continuous transaction and course of dealing, the account will be considered as one continuous account and one demand. . . .' ''

In the Boylan case there was evidence from which it could reasonably be inferred that such had been the understanding of the parties and the jury having drawn that inference the verdict was not disturbed. In the instant case the facts found by the court justified such inference as to the payments made on account of the note and the court must have drawn such inference as it stated in its conclusions of law that the action was not barred.

· In Roberts v. Neale, 134 Mo. App. 612, 114 S. W. 1120, Roberts and others had given a note to Neale, due December 8, 1887. Payments had been made until a payment made in December, 1897, discharged the note. Thereafter, being ignorant of the fact that the note had been paid, Roberts made payments thereon from March, 1898, to August 25, 1902. Roberts, discovering that the note had been discharged, sued October 5, 1905, to recover the money he had paid after such discharge. The only item paid within five years prior to the suit was that of August 25, 1902. The Statute of Limitations was interposed. In holding that none of the items were barred ELLISON, J., speaking for the court, said:

"In this State it is not necessary in order that items within the statutory period may draw inside the items outside that period, that the account should be mutual with items for and against either party. The account may do this even though it be one-sided, with all the items against one party. [Chadwick v. Chadwick, 115 Mo. 581.] And, therefore, where it is fairly inferable from the conduct of the parties, while the account is accruing, that it is to be taken as one, it will be so regarded by the courts. [Ib.] And the question whether it is so inferable is one for the jury. [Thompson v. Brown, 50 Mo. App. 320.] In this case the evidence clearly shows that the payments were made at different times in relation to the one thing—the note—and that they were necessarily regarded by the parties as making one aggregate or single amount, viz.: a sum sufficient to discharge the note. And the jury, under proper instructions, has so found." [134 Mo. App. l. c. 616.]

In the instant case the payments of interest and commission after December 19, 1921, were made by plaintiff, without *quid pro quo*, at the request and for the accommodation of defendants, and while there was shown no specific agreement to that effect it must have been understood and intended by the parties as a *continuation* of the note transaction linking together the prior payments made on account of the note and those made subsequently pursuant to such request of

defendants. The statute therefore did not start running until the last of the payments so made.

We have reached a different conclusion, however, as to the item of $4,940 paid in cash at the 1914 trustee's sale. When that sale and deed were set aside under the decision of this court plaintiff's right of action to recover the money paid accrued, as we have shown. When plaintiff refused to continue paying interest on the $13,000 note and then consented to do so for defendant's accommodation, nothing whatever was said between the parties about the $4,940 in cash which had been paid at the trustee's sale, nor was that sale mentioned.

The circuit court made no finding that the $4,940 cash payment had been referred to in any way by either party nor would the evidence have justified such finding. Nothing was said about a future settlement of claims generally between the parties. They spoke only of continuing the interest payments on the note and keeping it alive. The only connection between the note and the cash payment was the fact that origially both grew out of the same general transaction, the sale and purchase of the land. But at that time they could not have been considered by the parties as in the nature of items of a single account. Both parties evidently then considered the sale valid and the transaction closed. The subsequent payments of interest and commissions had reference only to the note. If the parties, in their conversation about keeping the note alive had had in mind a future settlement which would include the $4,940 item it would seem that something would have been said about it.

In Smith v. Collins, supra, 247 S. W. l. c. 459, it is said:

"According to the way it is phrased in the books, where the account lacks mutuality and includes matters not morally connected, before it can be treated as a running account so as to ward off the statute by means of items therein which are within the limitation period, there must be evidence from which it is fairly inferable from the conduct of the parties, while the account is accruing, that the whole was regarded by them as one and was to be settled for as such at some future time." [Citing cases.] [See also Sidway v. Missouri Land and Live Stock Co., 187 Mo. 649, 668-72, 86 S. W. 150.]

Under the facts as found by the circuit court (to which finding plaintiff did not except) and as shown by the evidence, we think the Statute of Limitations bars plaintiff's right to recover the item of $4,940 and the interest allowed thereon.

III. The circuit court correctly held that plaintiff was not precluded from recovery on the theory of *res adjudicata.* The claim of plaintiff and Walton against the trust company was not actually adjudicated or considered in the accounting taken in the Hurst Company suit. It is not so contended by defendants, their contention being that it might and should have been there presented and adjudi-

cated and for that reason is now *res adjudicata*. That doctrine does not apply to the situation here shown. The trust company and Walton and Scheer were co-defendants and not adversary parties in the Hurst Company suit. Their claims against each other had nothing to do with the Hurst Company's claim for accounting and were not required to be determined in order to determine the issues presented by the Hurst Company's bill. As said by this court on the second appeal of the Hurst Company's suit (291 Mo. l. c. 70):

"*As to the interest allowed the Trust Company*. It is said that Walton paid a certain amount in cash and afterwards paid the trust company interest on his $13,000 note which he gave for the deferred payment at the trustee's sale, and therefore plaintiffs should not be required to pay the full amount of interest upon the Massey note in order to redeem. But we hold that the amount paid by Walton to the trust company is a matter of accounting between Walton and the trust company in which plaintiffs are not legally interested, as was held by the lower court."

■ The instant suit is not an action between the same parties nor upon the same cause of action as in the Hurst Company suit. Even if the parties herein, though co-defendants *might have* by their pleadings assumed the position of adversaries in the Hurst suit (Springfield v. Plummer, 89 Mo. App. 515), they did not do so. Neither presented any claim for an accounting as against the other and the trial court expressly stated that no such accounting was being taken or considered, following, as it was bound to do, the ruling of this court above quoted.

■ A judgment is conclusive in a subsequent action between the same parties on the same cause of action of all matters which might have been litigated therein, but where the causes of action are different, even where the parties are the same, it is only conclusive of matters which were in fact litigated therein. And it is not conclusive of any fact not necessary to be proved in the former case. [Dolph v. Maryland Casualty Co., 303 Mo. 534, 261 S. W. 330, 332; National Bank of Commerce v. Maryland Casualty Co., 307 Mo. 417, 270 S. W. 691, 696.] Generally, parties to a judgment are not bound or estopped by it in a subsequent controversy between each other unless they were adversary parties in the original action. [McMahan v. Geiger, 73 Mo. 145. 149: State Bank of St. Louis v. Bartle, 114 Mo. 276, 281, 21 S. W. 816; Missouri, Kansas & Texas Railway Co. v. American Surety Co., 291 Mo. 92, 108-11, 236 S. W. 657, 662-3 and cases cited.]

"It may be said that unless the defendants contest an issue with each other, either upon the pleadings between themselves and the plaintiffs, or upon cross-pleadings between themselves, the judgment or decree will not be *res adjudicata* in subsequent litigation between them. There can be no doubt that upon proper pleadings a judgment may determine the rights of the defendants even between themselves,

and our code provides for such a proceeding, but a judgment against defendants, if there are no issues between them, does not bind them as against each other." [Charles v. White, 214 Mo. 187, 211, 112 S. W. 545, citing cases.]

In Joyce v. Growney, 154 Mo. 253, 265, 55 S. W. 466, it is said:

"The statutes relating to pleadings do not authorize one defendant to inject into the plaintiff's suit an independent suit either at law or in equity against his co-defendant not necessary or germane to h:s defense to the plaintiff's suit, and the relief that may be granted to one defendant against another is only such as is incidental to his defense." [See, also, Fulton v. Fisher, 239 Mo. 116, 143 S. W. 438.]

Appellants cite MacDonald v. Rumer, 320 Mo. 605, 8 S. W. (2d) 592, as opposed to the above quoted ruling in Joyce v. Growney, supra. We do not so construe it. In that case the defendant trustee by his cross-bill sought relief against both the plaintiff and his co-defendants and his cross-bill was not the injection of an independent suit against a co-defendant with which plaintiff had no concern. That case is distinguishable in its facts from the Joyce case and from the case at bar.

The learned trial court correctly concluded that the accounting in the Hurst Company suit did not adjudicate plaintiff's claim against defendants herein and was no bar to this action.

IV. A large part of appellant's brief is devoted to the contention that plaintiff cannot recover, even if otherwise entitled to, because, as appellants now claim, his cause of action arose out of an unlawful conspiracy between him and Walton and the trust company to chill bidding at the trustee's sale of February 28, 1914. They invoke the doctrine that courts will not aid either party to a fraudulent or illegal scheme in carrying it out or as appellants phrase it, "in adjusting its accounts or in dividing its spoils," but will leave them where they placed themselves, refusing aid to either. This contention is based on the fact that on the first appeal of the Hurst Company suit, 216 S. W. 954, this court found and held that Walton, with whom Scheer was acting, and the trust company had wrongfully conspired to prevent a fair sale and that their conduct had tended to suppress bidding, by reason of which the land had sold at an inadequate price; and for those reasons the sale was set aside.

It should be observed that neither in their pleadings nor at any stage of the trial in the circuit court did the defendants suggest any such defense or claim. They pleaded their defenses specifically and at length and tried the case on a theory not only wholly different from but even inconsistent with this contention now made and which was first suggested in their motion for a new trial. Notwithstanding such fact they claim they are entitled to urge the point here under the authority of Vette v. Hackman, 292 Mo. 138, 237 S. W. 802. We deem

it unnecessary to consider the questions of law and of practice thus raised for these reasons: We have held that plaintiff's action so far as concerns the cash item of $4,940 is barred by limitation. That holding eliminates that item. All of the other items sued for and recovered were paid after the trustee's sale of February 28, 1914, to-wit, August 28, 1914, and thereafter. On the second appeal of the Hurst Company suit this court, answering the Hurst Company's contention that the trust company was liable as a conspirator with Walton for waste committed by the latter after he took possession of the land pursuant to the trustee's deed, held that the conspiracy above referred to ended when the trustee's sale was made and the trust company received the cash and notes and deed of trust of Walton for the purchase price and did not extend to Walton's *taking possession of the property* or committing waste thereon (291 Mo. l. c. 69-70, 236 S. W. 58). Walton's taking possession may be said in a sense to have grown out of the conspiracy or to have been a result thereof. So, in a sense, the giving of the $13,000 note may be said to have grown out of or resulted from the conspiracy. But the interest payments thereafter were made after the conspiracy had ended and we are not willing to extend the doctrine advanced by appellants to those payments even if we were convinced that it applied to the cash payment of $4,940—as to which we express no opinion.

Moreover, it was contended by the Hurst Company on the second appeal that the $4,940 cash and the interest paid by Walton to the trust company on the $13,000 note up to the time of that trial should be credited on and deducted from the amount it owed on the Massey note. Answering that contention this court said:

"But we hold that the amount paid by Walton to the trust company is a matter of accounting between Walton and the trust company in which plaintiffs are not legally interested." [291 Mo. l. c. 70.] That was at least a strong intimation, if not an actual holding, that Walton would be entitled to an accounting from the trust company. If this court had deemed that Walton's conduct was so shot through with fraud as to preclude him from any redress in court, even as to payments made to the trust company after the conspiracy had ended, would it not have left him where he had placed himself and given the Hurst Company, the intended victim of his wrongdoing, the benefit of the payments he had made to the trust company and which had been applied when made on the Massey debt? We rule this point against appellants.

 V. At the close of the trial defendants requested several declarations of law which the court refused. Whether such refusal was because the court deemed the declarations incorrect or because it had, pursuant to plaintiff's request, made and stated a finding of the facts does not appear. We shall not further lengthen this opinion by setting

out the requested declarations. One was in the nature of a demurrer to the evidence; another sought to present defendant's theory of *res adjudicata* and another its theory of the issue of limitation. These failed to state the law correctly as applicable to the facts and therefore were properly refused. Another hypothesized the facts as contended for by defendants and as their evidence tended to show bearing upon their first defense hereinabove referred to. Had no finding of facts been made we think that declaration should have been given. But in a case tried to the court the office of declarations of law is to indicate the theory upon which the court tried the case and reached its conclusion. In this case the court made and stated its finding of facts and found the facts upon that issue against defendants and contrary to the facts hypothesized in the refused declaration. Of what avail could it have been to defendants for the court to have given the declaration? It would have been in effect merely saying to them ''If I found the facts as you hypothesize them I would give you judgment. But I do not so find the facts. On the contrary I find them thus (stating them), and on those facts plaintiff should have the judgment.'' Under the circumstances we cannot see how defendants could have been prejudiced by the court's refusal of that declaration and we therefore need not determine the question, urged by appellants, that where one party in a jury-waived case requests under the statute a separate statement of the court's finding of facts and conclusions of law, which is accorded, the other party is still entitled to present declarations of law and have them passed upon.

VI. Appellants assert that the court did not make a finding as to all the material facts. As we understand this claim it is that the court did not find the facts relative to the conspiracy preceding the 1914 foreclosure as found and set out by this court in its opinion in the Hurst Company's appeal. No other omission claimed to be material is pointed out and we discover none. The court's finding covers all matters put in issue by the pleadings and responds to the evidence, except for the omission referred to. Those facts were in evidence only because contained in the opinions of this court which were introduced. The court in its finding referred to those opinions, giving book and page. Under the circumstances we think that was sufficient. We have taken cognizance of the facts stated in those opinions so far as applicable to the issues here involved.

VII. In their reply brief appellants make the point that the court's finding of facts is indefinite and insufficient in that it finds the payments sued for were made by the plaintiff ''and/or'' Walton, or by both, and were made to the trust company ''and/or'' the bank. The court found that Walton paid the ''carrying charges'' for both on the $13,000 note until a certain date when he sold his interest in the

land to plaintiff and that thereafter plaintiff paid them, and also that Walton had prior to suit assigned all his rights and interest in such payments to plaintiff; also that at a certain date the bank was organized as a "subsidiary" of the trust company, the latter's assets, including the note, assigned to it and that thereafter it acted for both itself and the trust company. We are not prepared to say that the finding was too indefinite to support the judgment. But a sufficient answer to this contention is that the point was not briefed or mentioned in appellant's "points and authorities" in its original brief. A new point raised for the first time in a reply brief is not entitled to consideration. [Cech v. Mallinckrodt Chemical Co., 323 Mo. 601, 20 S. W. (2d) 509, 516, and cases cited.]

VIII. Appellants make the point that the court erroneously struck out part of the original answer of the trust company which they claim transformed the action into a suit in equity and that it should now be treated as an equity suit. Each defendant first filed a separate answer. Upon motion of plaintiff a portion of the trust company's answer was stricken out by the court. Thereafter the trust company by leave of court *withdrew* its answer and filed a demurrer to the petition, which was overruled on May 29, 1927. On June 6, the trust company again filed a separate answer, which is not set out in the abstract of record, to which plaintiff filed a reply, not set out in the abstract. On October 4, defendants filed a joint amended answer on which the case went to trial. We are inclined to think there was no error in the striking out of said portion of the trust company's first answer but refrain from discussing the question because we think said defendant abandoned the point when it subsequently voluntarily withdrew that answer and later filed other and different answers presenting a different defense and making no attempt to present the alleged equitable defense and prayer that had been stricken out of its first answer. It is in no position now to complain of that ruling of the court.

Our conclusion is that the judgment should be reversed and the cause remanded to the circuit court with directions to that court to disallow the item of $4,940 and to enter judgment for plaintiff for the amount of the remaining items originally allowed, to-wit, $7,-840.67, with interest thereon at the rate of six per cent per annum from December 7, 1927, the date suit was filed, and for costs. It is so ordered. *Westhues* and *Fitzsimmons, CC.,* concur.

PER CURIAM:—The foregoing opinion by COOLEY, C., is adopted as the opinion of the court. All of the judges concur.