MARGARET A. MacDONALD and ST. LOUIS BREWING ASSOCIATION, Intervener, Appellants, v. RICHARD O. RUMER, Trustee of Bankrupt Estate of MICHAEL J. O'DONNELL, Appellant, and MICHAEL O'DONNELL and CATHERINE O'DONNELL.—8 S. W. (2d) 592.

Division One, July 3, 1928.

606

*Taylor R. Young* and *Abbott, Fauntleroy, Cullen & Edwards* for appellant.

*Laughlin, Frumberg, Blodgett & Russell* for respondents.

608

*Abbott, Fauntleroy, Cullen & Edwards, Samuel Klamon* and
*Taylor R. Young* for appellants in reply.

ATWOOD, J.—This is a suit commenced by Margaret A. Mac-Donald on January 3, 1925, in the Circuit Court of the City of St. Louis, against Michael J. O'Donnell and Catherine O'Donnell. Her petition charged that on March 18, 1921, she obtained judgment against defendant Michael J. O'Donnell, upon which there was due a balance of $1861.70 with costs; that she caused an execution to issue on said judgment, and that a nulla-bona return had been made thereon; that on April 26, 1923, defendant Michael J. O'Donnell had purchased with his own money an apartment building at 5252-5254 Page Avenue, St. Louis, Missouri, but for the purpose of preventing plaintiff from collecting her judgment said defendant had fraudulently taken the title thereto in the name of his mother, Catherine O'Donnell; that on June 15, 1923, the said Michael J. O'Donnell had also purchased with his own money an apartment known as 5018-5020 Delmar Avenue, in said city of St. Louis, but for the purpose of preventing plaintiff from collecting her said judgment he had fraudulently taken the title thereto in the name of his said mother, and that the said Catherine O'Donnell had no interest in any of said real estate, but was a mere trustee for her said son and had accepted said trust in furtherance of the fraud being thus practiced upon plaintiff. Plaintiff's petition further alleged that after defendant Michael J. O'Donnell had thus acquired said real estate she caused an execution to issue on her said judgment, and that a nulla-bona return had been duly made thereon. Plaintiff prayed that the court divest title to both parcels of real estate out

of Catherine O'Donnell and vest the same in defendant Michael J. O'Donnell and order the property sold for the purpose of satisfying said execution, and for other equitable relief.

The cause was returnable to the February, 1925, term of said court, and summons was duly served on the defendants on 8th day of January, 1925. On January 13, 1925, Michael J. O'Donnell filed a voluntary petition in bankruptcy in the United States District Court and on that day was duly adjudged a bankrupt, and appellant Richard O. Rumer was duly appointed and still is the duly qualified and acting trustee in bankruptcy of the bankrupt estate. On February 10, 1925, suggestion of the bankruptcy of the defendant Michael J. O'Donnell was made to the court in which plaintiff's suit was pending, and on the 12th day of February, 1925, the defendants filed in said court in said cause a duly certified copy of the adjudication in bankruptcy. On February 10, 1925, defendant Catherine O'Donnell filed her separate answer in the nature of a general denial to plaintiff's petition. On May 18, 1925, appellant, St. Louis Brewing Association, a corporation, by leave of court, filed an intervening petition in said cause containing similar and additional allegations to those contained in plaintiff's petition. Thereafter on May 23, 1925, Richard O. Rumer, trustee in bankruptcy of the bankrupt estate of Michael J. O'Donnell, by leave of court and of the referee in bankruptcy, entered his appearance in said cause and filed an answer and cross-bill to said petition and intervening petition, alleging, among other things, that defendant Catherine O'Donnell took title to the real estate mentioned in said petition and intervening petition in trust for said bankrupt, defendant Michael J. O'Donnell; that she has no real interest in said property, paid no part of the purchase price and for the purpose of defrauding the plaintiffs and to hinder and delay and prevent the collection of their respective claims and claims of other creditors she accepted said trust for defendant Michael J. O'Donnell. Said answer and cross-bill prayed the court to divest title to said real estate out of defendant Catherine O'Donnell and vest the same in said trustee as trustee of the bankrupt estate of Michael J. O'Donnell, and that in the meantime a receiver be appointed to take charge of and collect the rents and profits and operate said real estate pending a final hearing, and for further equitable relief. On June 22, 1925, defendants Michael J. O'Donnell and Catherine O'Donnell filed separate answers to said intervening petition and to said answer and cross-bill, all in the nature of general denials. Upon a hearing of said cause evidence was introduced in behalf of plaintiffs, defendants introduced no evidence, and the trial court dismissed plaintiff's petition, the intervening petition of the St. Louis Brewing Association and the cross-bill of Richard O. Rumer, trustee, and entered

judgment accordingly, from which judgment said plaintiff, said intervening petitioner and said trustee in bankruptcy have appealed.

The errors assigned by appellants are that Catherine O'Donnell should have been divested of the title to both pieces of property and said title vested in the trustee in bankruptcy; and that "the decree of the court is against the law and all the evidence in the case." It is thus apparent that appellants are here contending that respondent, Catherine O'Donnell, should be divested of the title to both pieces of property, and that the title to said properties should be vested in appellant, Rumer, trustee of the bankrupt estate of Michael J. O'Donnell. The basis of the trial court's finding does not appear in the decree entered, but from the following colloquy between counsel and the court at the close of the case it seems to rest upon the belief that the allegations of fraud were not sustained by the evidence:

"THE COURT: I think this case requires a stiff weight of evidence to be sustained. It is easy enough to take the property out of the name of one and put it into another, but I take it there ought to be absolutely no question about it.

"MR. YOUNG: I don't think there is, Your Honor, in this case.

"THE COURT: I am going to give a decision in this case and I am going to dismiss your bill."

Before weighing the evidence, however, we will consider three of the four points submitted in respondents' brief going to the right of appellants, in this proceeding, to the relief above mentioned. The points are (1) that the exclusive right to bring suits to set aside the conveyances of a bankrupt is vested in the trustee in bankruptcy; (2) that a stranger cannot voluntarily inject himself into a pending suit as a defendant; and (3) that a defendant cannot, under the guise of a cross-bill, maintain an independent suit against his co-defendants.

A sufficient answer to the foregoing objections is that not having been raised by answer or demurrer they must on this appeal be regarded as waived. [Zeitinger v. Hargadine-McKittrick D. G. Co., 250 S. W. (Mo. Sup.) 913, l. c. 916.] But even if considered on their merits they would have to be overruled. At the time this suit was filed defendant Michael J. O'Donnell had not been adjudged a bankrupt. Section 70 of the Bankruptcy Act provides that the trustee, upon appointment and qualification, shall be vested with the title to the bankrupt's property as of the date of the adjudication, excluding that which is exempt and including that transferred by him in fraud of creditors. Subdivision (e) of the same section also provides that the trustee "may avoid any transfer by the bankrupt of his property which any creditor of such bankrupt might have avoided, and may recover the property so transferred, or its value,

from the person to whom it was transferred, unless he was a bona-fide holder for value prior to the date of the adjudication." [11 U. S. C. A. pp. 278, 504; Riggs v. Price, 277 Mo. 333, l. c. 348; Blake v. Meadows, 225 Mo. 1, l. c. 26.] If, therefore, a trustee upon his appointment finds that a suit has already been commenced in a state court by one or more creditors to set aside a conveyance alleged to be fraudulent as to them, he is not regarded as a mere stranger or volunteer without right to be made a party. On the contrary, with the permission of the bankruptcy court and of the court where the suit is pending he is ordinarily allowed to intervene (11 U. S. C. A. p. 595), or be made either a party plaintiff or defendant. [33 C. J. 477; Davis v. Vandiver & Co., 38 So. (Ala.) 850; Jones v. Meyer Bros. Drug Co., 61 S. W. (Texas) 553; Atkins v. Trust Co., 124 S. W. (Ky.) 879.] The petition of plaintiff Margaret A. MacDonald, filed before the adjudication of bankruptcy, sought to vest title to the lots in defendant Michael J. O'Donnell and sell same for the satisfaction of her execution only. The trustee's cross-bill sought to vest the title in him as trustee for all the creditors. If sustained it would go against the original plaintiff to the extent that said properties might be applied exclusively to the satisfaction of her execution. It sought relief against both plaintiff and the original defendants, and was not the commencement of an independent suit. It is a proper pleading in the case even under the authorities here cited by respondents. [Fulton v. Fisher, 239 Mo. 116; Mathiason v. St. Louis, 156 Mo. 196; Joyce v. Growney, 154 Mo. 253.] If justified by the evidence the trial court should have granted the relief sought by the trustee in bankruptcy.

Respondents' fourth point is that "fraud is never presumed, but must be proven, and, when the circumstances are as consistent with honesty as with fraud, the presumption of honest conduct is not overcome." Their final contention is that "the court could not properly have found for any of the appellants on the merits." The position of respondents is thus squarely at variance with that of appellants, and the issue presented for our determination is whether or not under all the evidence the trial court should have decreed title in the trustee in bankruptcy.

We have no fault to find with the law abstractly stated in respondents' fourth point. The question is, does it apply to the case made? The trustee's cross-bill alleges that the bankrupt does not own or possess in his own name any real or personal property subject to execution, and that he scheduled no property having any value in excess of his exemption in the bankruptcy court; that prior to filing his petition in bankruptcy said bankrupt became the sole owner of the lots in question; that for the purpose of defrauding the plaintiffs and to hinder and delay and prevent the collection of their

respective claims and the claims of other creditors the defendants, Michael J. O'Donnell and Catherine O'Donnell, who sometimes spells her name as Katherine O'Donnell, fraudulently took the legal title thereto in the name of the defendant, Catherine O'Donnell, and she now holds the same in trust for said bankrupt; that the said Catherine O'Donnell paid no part of the purchase price, has no real interest in said properties, and in furtherance of said fraudulent purpose she accepted said trust for said bankrupt; that prior to the filing of said petition in bankruptcy and subsequent to the acquisition of title to said properties as aforesaid plaintiff Margaret A. MacDonald caused an execution to issue on her said judgment against defendant Michael J. O'Donnell but that neither the sheriff nor said plaintiff is able to find any property real or personal owned by or belonging to defendant Michael J. O'Donnell, other than that resting in the name of defendant Catherine O'Donnell as aforesaid, and for that reason said execution cannot be satisfied; that the said Catherine O'Donnell is insolvent, and that the rental derived from said real estate is approximately $500 a month.

The record discloses the following evidence tending to support the above allegations:

Judgment rendered March 18, 1921, in favor of Margaret A. MacDonald and against Michael J. O'Donnell for $1408.50; return of sheriff, dated May 31, 1921, on original execution issued on said judgment, showing levy and sale of certain personal property to which James O'Donnell asserted and later apparently abandoned claim, from which sale the sum of $400 was realized, of which amount $149.75 was applied to the satisfaction of costs and $250.25 was applied as a credit on said judgment; nulla-bona return of sheriff, dated December 23, 1924, on alias execution issued on said judgment; admission that defendant had made no payment on said judgment; claim of St. Louis Brewing Association for $3986.12 against said bankrupt estate; warranty deed dated April 26, 1923, from Annie Mitleider, a widow, conveying the Page Avenue property to Catherine O'Donnell, reciting a "consideration of $100 and other valuable considerations;" warranty deed dated June 12, 1923, from J. P. O'Reilly and wife conveying the Delmar Avenue property to Catherine O'Donnell, reciting a "consideration of $5 and other valuable considerations;" schedules filed in the bankruptcy court by said bankrupt; uncontradicted testimony that the sale first aforesaid was made through the Singer-Klein Realty Company; that the purchase price of said real estate was $19,000, of which amount $5704.42, plus $500 earnest money, was paid in cash, said sum of $5704.42 being paid April 26, 1923; that said realty company continued to collect the rents from successive tenants; that at the time of the trial Catherine O'Donnell was occupying this property and paid a rental

of $65 a month; that under date of April 26, 1923, said realty company rendered a complete itemized statement in writing of the receipts and expenditures connected with this transaction, the same being entitled:

"Mr. Michael J. O'Donnell

"To Singer-Klein Realty Co., Dr.

"For purchase of 5252-5254 Page Avenue."

Said statement, among other things, showing payment of $500 earnest money, first deed of trust to amount of $6500, second deed of trust to amount of $4500, third deed of trust to amount of $1375, and balance due of $5705.52. That the other sale aforesaid was also made through the same realty company; that the purchase price of this property was $22,500, of which amount the sum of $5348.24 was paid in cash June 15, 1923, in addition to $1500 earnest money previously paid; that under date of June 15, 1923, said realty company also rendered a complete itemized statement in writing of the receipts and expenditures connected with this transaction, the same being entitled.

"Mr. Michael J. O'Donnell

"To Singer-Klein Realty Co., Dr.

"For purchase of 5018-20 Delmar Avenue."

Said statement, among other things, showing payment of $1500 earnest money, the amounts of certain deeds of trust, and a balance due of $5348.24; that on April 26, 1923, said realty company received $6,000 from M. O'Donnell on account of the purchase price of said Page Avenue property, which was in addition to the $500 earnest money paid April 5, 1923; that thereafter said realty company rendered statements to Michael J. O'Donnell showing rents collected from said properties, accompanied by checks payable to his order for balances shown to be due him thereon. That said realty company had no records showing that Catherine O'Donnell ever paid any part of the purchase price of said properties, and said company accounted for rents therefrom to no one except Michael J. O'Donnell; that Catherine O'Donnell was the mother of Michael J. O'Donnell, and as late as 1920 he had always said that he supported his mother; that the City Trust Company issued a treasurer's check for $6000, payable to M. J. O'Donnell dated April 25, 1923, which was paid by said trust company April 28, 1923, at which time it bore the indorsement of M. J. O'Donnell to the Singer-Klein Realty Company; that another treasurer's check was issued by said trust company for $5000, payable to the order of M. J. O'Donnell, dated June 14, 1923, and paid by said trust company June 18, 1923, at which time it bore the indorsement of M. J. O'Donnell to Singer-Klein Realty Company, and the further indorsements of Singer-Klein Realty Company and Margaret J. O'Reilly; that the indorsements of M. J.

O'Donnell were in the handwriting of defendant Michael J. O'Donnell.

On cross-examination it was developed that M. J. O'Donnell did not have any deposit with the City Trust Company in April or June, 1923, sufficient to purchase either one of said treasurer's checks. From this respondents argue that these treasurer's checks were not purchased by defendant Michael J. O'Donnell or with his money. In view of the fact that this information was peculiarly within the knowledge of defendants Michael J. and Catherine O'Donnell and they failed to testify at all in the case, we do not think any such inferences are to be drawn from the evidence. Prima-facie ownership of these checks was shown in defendant Michael J. O'Donnell, as well as their delivery by him in part payment of the properties in question. If the checks were not purchased with his money but with the money of his mother and he was merely acting as her agent in these transactions, at the close of plaintiffs' case these defendants should have put such facts in evidence. But they failed to do this, apparently preferring to stand on the case made by plaintiffs and certain statements drawn out of witnesses admittedly friendly to them. The worthlessness of such statements for this purpose is well illustrated by the testimony of witness Pachter, cashier for the Singer-Klein Realty Company, who first boldly asserted that Catherine O'Donnell furnished the purchase money in both transactions, and later, when pressed by plaintiffs' counsel and the court, admitted that Michael J. O'Donnell gave him the money and he did not know where he got it. Witness Klein of the realty company, who was chiefly in charge of the actual negotiations, testified that in connection with the purchase of these properties defendant, Michael J. O'Donnell, told him that "he wanted to buy the property for his mother," that Catherine O'Donnell told him to render the statements of money paid out and received to Michael J. O'Donnell, and that subsequently his company lent Catherine O'Donnell money and she agreed that this should be repaid out of the surplus of the rents collected. Whatever inference of agency, if any, might be drawn from this testimony if it stood alone is in our judgment entirely overcome by the other evidence in the case. Particularly significant is the manner in which these transactions were from the beginning carried on the books of the realty company. These records, like the evidence taken as a whole in the case, clearly indicate that Michael J. O'Donnell was acting for himself and not as the agent of Catherine O'Donnell.

Michael J. O'Donnell's insolvency at the time the conveyances in question were made was fully established and even if he bought these properties for his mother, unless they were purchased with her means and he was only acting as her agent in these transactions, the con-

veyances would be fraudulent as to his creditors and the mother would merely hold the legal title as trustee for him subject to be divested and vested in the trustee in bankruptcy for the benefit of all the creditors. [Ice & Cold Storage Co. v. Kuhlmann, 238 Mo. 685; Garrett v. Wagner, 125 Mo. 450; Patton v. Bragg, 113 Mo. 595.] Such conveyance would be voluntary, presumptively fraudulent, and the burden would be on the donee to establish their validity. [Miller v. Allen, 192 S. W. (Mo. Sup.) 967, l. c. 971; Scharff v. McGaugh, 205 Mo. 344, l. c. 364; Vandeventer v. Goss, 116 Mo. App. 316.] Notwithstanding the prima-facie case made by plaintiffs, neither the donee nor the donor made any effort to discharge this burden. Even if plaintiffs' evidence had only indicated suspicious circumstances or "badges of fraud" the failure of these defendants to testify as to facts thus put in question and well within their knowledge would have been regarded as corroborative of such inferences as would naturally flow from the circumstances indicated. [12 R. C. L. sec. 10; 20 Cyc. 453; Henderson v. Henderson, 55 Mo. 534, l. c. 559.] Where in addition to proof of Michael J. O'Donnell's insolvency, his close relationship to the donee, and other suspicious circumstances, plaintiffs made out a prima-facie case of his payment for and purchase of the properties in question, the failure of these defendants to testify should certainly be taken as a failure to discharge a burden of proof which properly rested upon them.

This record does not present such a case as Bank v. Hutton, 224 Mo. 42, l. c. 72, cited by respondents, where two views were open, "the one noble and the other ignoble." The evidence here tends to present the latter view only. Nor are we bound to accept the chancellor's view, the evidence not being conflicting or such as might give rise to conflicting inferences of law. [Howard v. Zweigart, 197 S. W. (Mo. Sup.) 46.]

The judgment is reversed and the cause remanded with directions to the trial court to enter judgment as of date of the original judgment entered herein divesting defendant Catherine O'Donnell of the title to the real estate in question and vesting the same in the trustee of the bankrupt estate of defendant Michael J. O'Donnell. All concur.