Joe Ray ADAMS and Dorothy Elaine Adams, Respondents,

v.

Martin RICHARDSON, Appellant, William L. Carter, J. B. Powell and Imogene Powell, Defendants.

No. 47752.

Supreme Court of Missouri,

Division No. 2.

Sept. 12, 1960.

**912**

Martin Richardson, Warrensburg, for defendant-appellant.

Edward W. Speiser, Salisbury, for plaintiffs-respondents.

BOHLING, Commissioner.

This is a suit by Joe Ray Adams and Dorothy Elaine Adams, husband and wife, against Martin Richardson, J. B. Powell and Imogene Powell, husband and wife, of Spring Hill, Kansas, to quiet and determine title to an undivided one-fourth interest inherited by J. B. Powell from Elmer Powell, his father, in approximately 371 acres of

land, fully described in the pleadings, in Randolph County, Missouri, and to remove the cloud of a deed from defendants Powell to defendant Richardson on plaintiffs' title as being in fraud of the rights of creditors of J. B. Powell. Service by publication was had upon the Powells, who filed no pleading in the case. Plaintiffs owned an undivided three-fourths interest in said real estate. There is no controversy with respect to two of the fourths owned by plaintiffs and another fourth owned by William L. Carter. Plaintiffs' petition was in two counts. Count I was as stated above. The second count, to which said Carter was a party, was in partition. The quiet title count was tried separately. Plaintiffs claim title to said one-fourth by virtue of plaintiff Adams's purchase under an execution issued in the case of Gladys Powell v. J. B. Powell, as hereinafter more fully developed. The substance of the court's finding was that the testimony of defendant Richardson was to be rejected because not credible; that said deed from defendants Powell to defendant Richardson did not leave sufficient assets of J. B. Powell in the State of Missouri to satisfy the judgment in Powell v. Powell aforesaid; that said deed to said Richardson was a voluntary conveyance recorded after defendant Richardson knew that said one-fourth interest of J. B. Powell had been levied upon under the execution aforesaid, and was made and delivered to hinder, delay and defraud the creditors of J. B. Powell, including the plaintiff in said suit of Powell v. Powell. The court's decree set aside and held for naught the deed from defendants Powell to defendant Richardson as against the Sheriff's deed to plaintiffs, and decreed plaintiffs "the owners of all the right, title and interest of J. B. Powell in and to the land" here involved. Defendant Richardson has appealed. "Defendant," as used herein, refers to said Richardson unless otherwise stated.

Gladys Powell obtained a divorce from J. B. Powell in the Circuit Court of Chariton County, Missouri, in 1945. They were married June 6, 1931, and six children were born of the marriage. The decree awarded the plaintiff $90 a month for, as testified to, the support and maintenance of the children. Gladys later married Sam B. Wright. Upon the advice of Elmer Powell, the father of J. B., Gladys had an execution issued on the judgment in 1952. The default in payments exceeded $7,000. The sum of $2,500 was paid on the judgment to Gladys in July, 1952. J. B. Powell continued the monthly payments until August, 1954, but made no payment thereafter.

Defendants Richardson and J. B. Powell have known each other since 1937 and are close friends. Richardson visited at Powell's home prior to the Powell divorce. They were hunting and fishing companions. After World War II they were airplane pilots for the same company. Richardson is a lawyer of Johnson County, Missouri. He represented J. B. Powell in the child support payment to Gladys in 1952. Powell was then earning $800 a month but, according to Richardson, Powell had no money, only his $800 a month job.

Elmer Powell died intestate August 18, 1956, leaving surviving as his heirs his grandson William L. Carter, son of a deceased daughter, and his children, Mrs. Edna Ponder, Mrs. Anna Moore, and J. B. Powell. An administration was opened on the Elmer Powell, deceased, estate on September 10, 1956. The estate was solvent.

J. B. Powell and Imogene Powell were residents of the State of Kansas prior and subsequent to the death of Elmer Powell.

There being a default of $3,060 or more in payments under the Powell v. Powell judgment, an execution was issued out of the Circuit Court of Chariton County on July 1, 1957, and delivered to the Sheriff of Randolph County, Missouri, and said Sheriff levied on all the right, title and interest of said J. B. Powell in said 371 acre farm on July 3, 1957.

At that time, July 3, 1957, the assets of J. B. Powell in the State of Missouri were

his interest, totaling $594.97, in the personal estate, and his undivided one-fourth interest in the 371 acres of the Elmer Powell, deceased, estate. The heirs of Elmer Powell had sold 10 acres of timber in the Spring of 1957 for $400 and under an order of partial distribution of personal property $2,000 had been paid J. B. Powell on or about May 13, 1957.

The preponderance of the evidence placed the fair market value of the 371 acres at $15,000 to $16,000. Defendant Richardson placed this value at $10,000.

Plaintiff Adams first heard on November 5, 1957, that J. B. Powell's interest in the land was to be sold and purchased said interest at the execution sale November 6, 1957, for $2,360 without investigating or having any actual knowledge of any adverse claim to Powell's title. The Sheriff's deed, naming plaintiffs as grantees, was dated November 6, 1957, and was filed for record November 12, 1957. Plaintiffs later purchased the interests of Mrs. Edna Ponder and Mrs. Anna Moore in the land.

George Thompson, a lawyer of Salisbury, Missouri, was local counsel for Gladys Wright in 1957. Defendant Richardson came to Thompson's office on July 19, 1957, stated he represented J. B. Powell, and asked who represented Mrs. Wright. Richardson stated Powell could not make the defaulted child support payments and wanted to have them reduced. Thompson informed Richardson that a levy under the judgment had been made on the 371 acre farm. Richardson made no mention at that time that he had a deed from J. B. Powell and wife covering the interest of Mr. Powell in the 371 acres or that he claimed any interest in the 371 acres.

Defendant Richardson filed for record in Randolph County on August 3, 1957, a warranty deed from J. B. Powell and Imogene Powell, his wife, conveying to him the undivided one-fourth interest in said 371 acres inherited by J. B. Powell from Elmer Powell. The date of this deed and its acknowledgement is May 1, 1957. Richardson re-

ceived this deed through the mail sometime after May 1, 1957; "it could have been in June, I expect, before I got this, or maybe a little later. I am not sure." He stated he made the trip of July 19th to make sure his description was correct; that he did not have the deed with him as he intended to take the abstract of title to his office; that, notwithstanding Thompson's testimony, the levy on the 371 acres was not discussed while he was in Thompson's office on the 19th. However, there was testimony that Richardson and Powell were in Huntsville checking the records. Asked if this deed had not actually been written after his visit to Thompson's office, Richardson answered:

"I wouldn't know a thing about that. That would be a presumption on your part.

"Q. As a matter of fact, isn't that what happened? A. I would say no.

"Q. You would swear that deed' wasn't prepared and you didn't receive it after July 19, 1957? A. I think I would. I won't argue with you on that."

The deed recites the following consideration: "Valuable considerations and Ten and 00/100 Dollars." Richardson introduced in evidence his $1,000 check, dated July 4, 1952, payable to the order of Wesley Baker, carrying a notation "acct. J. B. Powell Loan," and endorsed "Wesley Baker," "J. B. Powell." He stated this represented money he advanced to Powell in 1952 to pay $2,500 on the judgment against Powell. He testified he did not know who prepared this deed, or when or where it was prepared; that J. B. Powell talked to him about what to do with his interest in the 371 acres and he finally called Powell's attention "to the fact he still owed me $1,000, and suggested he just turn it over to me"; that he, Richardson, placed $2.20 in revenue stamps, representing a consideration of $2,000, on the deed and cancelled them, and that the additional $1,000 consideration was for legal services performed for J. B. Powell back in 1952. But he did not know any-

thing about the deed until he received it and had nothing to do with stating the consideration in the deed.

Richardson testified at the trial that he took no security or note for his $1,000 loan to J. B. Powell, the cancelled check payable to Wesley Baker being his only written evidence of the debt; but he admitted he had testified in a deposition that he had Powell's note for this indebtedness and had returned it to Powell "after he transferred this property to me through this deed, for the consideration of it."

There was no testimony from Mr. or Mrs. J. B. Powell offered in the case. Although Richardson had passed in the vicinity of the farm, he first bothered to look at it in 1958. He stated it was not necessary for Wesley Baker, the payee of the $1,000 check and who lived at Dixon, Missouri, to testify; that there was no point in contacting the renter on the farm; and that he had not paid any of the farm expenses of 1957 or taxes.

Bill Eastin testified that J. B. Powell came to his place the last part of May, 1957, took him over to the 371 acres, said he was going to buy out the other heirs, and rented the 371 acres to him for half of the crop, Powell to furnish the seed; that they saw Arthur Welch and Powell agreed to furnish posts for a partition fence; that witness baled the hay and sent a bill to the heirs for their part of the baling expense; that Mrs. Powell mailed him a check in October, 1957, for $18.50 for J. B. Powell's part of the baling; that he first heard of Richardson claiming an interest in the place in December, 1957, when Richardson wrote asking about Powell's share of the crops, and that this was the only inquiry made of him by Richardson.

In the Summer of 1957 plaintiffs arranged to take the depositions of Mr. and Mrs. J. B. Powell at Olathe, Kansas. Richardson was present for the taking of the depositions but neither Mr. nor Mrs. Powell appeared.

In June, 1958, Mr. Adams and his attorney talked to J. B. Powell in Kansas. Powell stated he owed Richardson the $2,500 paid Gladys in 1952; that he sold his interest in the 371 acres to Richardson for $3,-000, Richardson giving him a $500 check, but later stated there was no check. Powell also made statements corroborative of Eastin's testimony about renting the farm, furnishing the posts, and payment of the baling expense, although Powell first denied having rented the farm to Eastin.

We pass to a consideration of the issues presented. See Supp. RSMo 1957, 1334, Rule 1.08 (now Rule 83.05, V.A.M.R.).

■ The motion for new trial is the basic after-trial motion to preserve trial errors for review. Subject to certain exceptions not material here, the requirement that errors must be presented to the trial court in a motion for new trial in order to be preserved for appellate review is mandatory and alleged errors first presented in an appellant's brief may not be adjudged on a civil appeal when not preserved in a motion for new trial. C. & O. Distributing Co. v. Milner Hotels, Inc., Mo.App., 305 S.W.2d 737, 738 [1, 2]; Gosnell v. Gosnell, Mo. App., 329 S.W.2d 230, 234 [5], and cases cited. This rule applies to suits in equity. State ex rel. Morton v. Cave, 359 Mo. 72, 220 S.W.2d 45, 49 [4]; A. B. C. O. Assisting Bldg. Const. Office v. Bagley & Co., Mo.App., 304 S.W.2d 43, 47 [2].

■ Defendant Richardson contends the trial court erred in permitting plaintiffs to amend their petition and add as parties defendant J. B. Powell and Imogene Powell. Plaintiffs say this issue is not mentioned in defendant's motion for new trial. Notwithstanding this position of the plaintiffs, defendant has filed no reply brief and does not show wherein the point is preserved for review in his said motion. We do not find it therein; and under the authorities supra it is not for review. Those interested are referred to Alnutt v. Leper, 48 Mo. 319; T. A. Miller Lumber Co. v. Oliver, 65 Mo.

App. 435, 437; Beck v. Hughes, Mo.App., 116 S.W.2d 210 [3]; and observations in Herriman v. Creason, 352 Mo. 1176, 181 S.W.2d 502, at page 505 [3].

■ Defendant contends reversible error occurred through plaintiffs' failure to prove the judgment alleged in their petition, citing Daggs v. McDermott, 327 Mo. 73, 34 S.W.2d 46, 49 [2], stating: "The judgment could be brought to the notice of the court in this suit, absent an admission thereof, only by being introduced into evidence." The objection that the Powell v. Powell judgment was never entered in evidence first appears in defendant's brief filed here, and was not presented to or expressly passed upon in the trial court. See § 512.160, subd. 1. Statutory references are to RSMo 1949, V.A.M.S. Furthermore, the judgment is not to be set aside unless clearly erroneous. § 510.310, subd. 4; Roberts v. Murray, Mo., 232 S.W.2d 540, 544 [2]. Richardson testified that he represented J. B. Powell in the child support proceedings resulting in the payment in 1952 on said judgment of $2,500 to Gladys. He knew about the judgment and its provisions. He states in his brief: "There is no dispute that J. B. Powell was considered a judgment debtor and common source of title by plaintiffs and defendant." He established by one of his witnesses that no entry showing satisfaction of the Powell v. Powell judgment appeared of record. Plaintiffs' evidence established that payments totaling $3,060 or more were in default when the execution here involved was issued. The parties expressly or impliedly proceeded in the trial court on the existence of the judgment. Defendant's contention is overruled.

■ Defendant says there was secondary evidence that the judgment was for alimony and the remarriage of Gladys prior to 1952 extinguished her right to further alimony as a matter of law under § 452.075. Section 452.075 was enacted in 1957. It did not become effective until August 29, 1957 (see Laws 1957, pp. 390, 882; § 1.130), and the issuance of the execution in Powell

v. Powell on July 1, 1957, was not barred by § 452.075 even if said judgment were for alimony (Nelson v. Nelson, 282 Mo. 412, 221 S.W. 1066, 1069 [8, 9]; Biewend v. Biewend, 17 Cal.2d 108, 117, 109 P.2d 701, 132 A.L.R. 1264). However, as indicated in the paragraph above, the testimony of the witnesses, including testimony from defendant Richardson, and the trial theory of the parties was that the judgment in the divorce proceedings provided for child support. Defendant brought out on cross-examination of a plaintiffs' witness that a modification of the divorce decree in 1958 reduced the monthly payments for child support from $90 to $35. The evidence sustains the finding of the trial court that the judgment provided for child support.

■ Defendant claims plaintiffs failed to prove they had exhausted all their legal remedies and that the judgment debtor was insolvent. Defendant stresses statements in Buckley v. Maupin, 344 Mo. 193, 125 S.W. 2d 820, 823, 824, a suit involving the sufficiency of a general, not a lien or judgment, creditor's petition, to the effect that before a suit can be maintained to set aside a conveyance as being in fraud of creditors, the creditor must exhaust his remedies at law and should allege and prove he has no adequate remedy at law. Plaintiffs did not allege that they had no adequate remedy at law; but this is not necessary where sufficient facts are stated from which the court can draw said conclusion. Blattel v. Stallings, 346 Mo. 450, 142 S.W.2d 9, 11 [2]. See Madden v. Fitzsimmons, 235 Mo.App. 1074, 150 S.W.2d 761, 766 [5]. Plaintiffs' petition meets the requirements set forth in the Blattel case.

■ "Insolvency * * * means inability to pay debts as they become due in the ordinary course of business." Bushman v. Bushman, 311 Mo. 551, 279 S.W. 122, 126 [10]; May v. Gibler, 319 Mo. 672, 4 S.W.2d 769, 771 [2]. There was evidence warranting findings that the deed to defendant Richardson was delivered after July 19, 1957; that the Sheriff's levy of July 3, 1957,

was known to defendant; that at that time J. B. Powell had not made any child support payment for approximately three years; that his only property in Missouri was his interest of $594.97 in the personal property and his undivided one-fourth interest in the 371 acres of his father's estate, and that said deed to defendant stripped J. B. Powell of his ability to pay his debts. Defendant cites no authority that a creditor has to prove that his judgment debtor has no property in some other state or states to establish his insolvency for maintaining his action against property in this state. See Alford v. Baker, 53 Ind. 279, 285; Thomas v. Stewart, 178 Okl. 308, 62 P.2d 966, 968 [2]; Rohrer v. Snyder, 29 Wash. 199, 69 P. 748 [3]; 37 C.J.S. Fraudulent Conveyances § 328, note 37.

■ The trial court found defendant Richardson's testimony not credible, and his deed from defendants Powell to be a voluntary conveyance. " 'A voluntary conveyance is fraudulent in law and void against existing creditors regardless of intent, if it includes so much of the debtor's property that it leaves him without means to pay his debts to them.' " Bostian v. Bono, Mo., 322 S.W.2d 813, 815, quoting Friedel v. Bailey, 329 Mo. 22, 44 S.W.2d 9, 11. Such voluntary conveyances establish an intent to hinder, delay or defraud the grantor's existing creditors (Citizens' Bank of Hayti v. McElvain, 280 Mo. 505, 219 S.W. 75 [1]), and place the burden on the donee to establish the validity of the transfer (MacDonald v. Rumer, 320 Mo. 605, 8 S.W.2d 592 [5]; McCluer v. White, 338 Mo. 1017, 93 S.W.2d 696 [3]; Miller v. Allen, Mo., 192 S.W. 967 [7]). Defendant in his brief adopts "as correct" the trial court's findings of fact in, among others, paragraph "5", wherein the trial court found that defendants Powell "voluntarily" executed and delivered said deed to defendant Richardson. If this concession that said conveyance was not founded on a valuable consideration (Godchaux Sugars, Inc., v. Quinn, Mo., 95 S.W.2d 82 [1, 2]), be an inadvertence, we, if Richardson's testimony over-

taxed the chancellor's credulity, are not disposed to interfere, as the trial court, who hears and sees the witnesses, is better able to judge their credibility than we, who read only the cold record. Kilbourn v. Kilbourn, 354 Mo. 17, 190 S.W.2d 206 [4, 5]; Mueller v. Mueller, Mo., 318 S.W.2d 365 [6, 7], citing authority; Dreyer v. Videmschek, Mo., 123 S.W.2d 63, 67 [3].

Richardson had nothing to do with stating the consideration ("Valuable considerations and Ten and 00/100 Dollars") in the deed; but he placed and canceled $2.20 in revenue stamps on the deed without consulting Powell, and testified the extra $1,000 thus represented covered legal services rendered Powell in 1952. Powell and Richardson were close friends, and Powell was earning $800 a month up to August, 1954. The deed is dated May 1, 1957; but Powell exercised dominion over the 371 acres and rented it to Bill Eastin the last of May, 1957, and paid his one-fourth part of a farm expense due Eastin in October, 1957. Richardson waited six months after the date of the deed to notify the tenant of his claim against the land, and did not disclose his claim to his co-owners or others when occasions arose for properly doing so in the ordinary course of business. Richardson first looked at the land in 1958, although in its vicinity on different occasions. J. B. Powell knew about his indebtedness and about his deed dated May 1, 1957, to Richardson. Wesley Baker, the payee in Richardson's check of July 4, 1952, should know the reason for the check to him. Defendant did not take the depositions of these witnesses or have them testify. See Henderson v. Henderson, 55 Mo. 534, 559; MacDonald v. Rumer, 320 Mo. 605, 8 S.W.2d 592, 596 [6]; First Nat. Bk. of Monett v. Vogt, 344 Mo. 284, 126 S.W.2d 199, 201 [4].

■ In addition, plaintiffs pleaded and we think plaintiffs made a case under the rule that: A conveyance by an insolvent judgment debtor to a general creditor of property the value of which is in excess of the amount due the creditor is void as

against judgment creditors of the debtor. Produce Exchange Bk. of Kansas City v. Winn, 345 Mo. 420, 133 S.W.2d 419, 425 [3]; Bostian v. Bono and Friedel v. Bailey, supra.

The foregoing disposes of all "Points" sufficiently presented under our Rules for consideration, and perhaps some issues not sufficiently presented.

The judgment and decree is affirmed.

BARRETT and STOCKARD, CC., concur.

PER CURIAM.

The foregoing opinion by BOHLING, C., is adopted as the opinion of the court.

LEEDY, P. J., EAGER and STORCK-MAN, JJ., and HUNTER, Special Judge, concur.